ELDRED R. CROW ET AL., PROSECUTORS, v. TOWN OF WESTFIELD ET AL., RESPONDENTS.

Argued October 7, 1947—Decided January 9, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutors, *Thomas F. Hueston.*

For the respondents, *Snevily & Ely (Robert S. Snevily,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J. This writ brings up for review a zoning ordinance amendment of the Town Council of Westfield changing a certain tract of property from residence "A" zone to residence "B" zone. Under the general zoning ordinance the former is restricted to single-family dwellings. In residence "B" zone two additional types are authorized: two-family homes appearing as one-family houses and garden apartments not over two stories high, limited to ten families per unit, with set-back, area and certain other restrictions.

Application was made to the Town Council of Westfield by Breton Woods Corporation to erect a garden-type apartment on the premises in question, which at the time were in residence "A" zone. Hearings were held on the application, at which full opportunity was given to all wishing to be heard. Thereafter this amendment was passed changing the particular premises to residence "B" zone.

The land in question comprises 11.6 acres of vacant, unimproved land bounded on the west by the line dividing Westfield from Scotch Plains, on the north by Brightwood Avenue, on the northeast by lots fronting on Embree Crescent, and on the southeast by lots fronting on Seneca Place. The surrounding area in Westfield is developed with one-family homes valued at different times between $5,000 and $14,000, while several blocks away there are homes valued up to $50,000. The neighboring area in Scotch Plains is zoned for residential and business uses.

The amendment was supported by many different groups. Thirteen property owners in the immediate vicinity, seven of whom almost abut the land in question, gave their approval. Various veteran organizations favored the change in order to alleviate the current housing shortage in the town. The local Board of Realtors approved the project. The Town Council

itself felt the erection of the garden apartments would establish an appropriate buffer against the less restricted uses of the neighboring township.

Opposition to the zoning amendment and development was voiced by a considerable number of residents of the neighborhood, some of whom live adjacent to the premises in question. They believed due to the large concentration of people and its transient nature property values would depreciate and the peace of the neighborhood would be disturbed.

Governing bodies of municipalities have been invested with power to enact general zoning regulations. *R. S.* 40:55–30. These regulations must be in accordance with a comprehensive plan to achieve specified purposes generally relating to the health, safety and general welfare of the community and with reasonable consideration to the character of each district, its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout the community. *R. S.* 40:55–32.

In exercising this power the municipality may be divided into districts of such number, shape and area as may be best suited to carry out the zoning purposes. *R. S.* 40:55–31. A zoning ordinance is an unreasonable exercise of that power when it does not create a district but merely undertakes to add an isolated lot to a district from which it is distantly separated. *Guaranty Construction Co.* v. *Bloomfield,* 11 *N. J. Mis. R.* 613; *Linden Methodist Episcopal Church* v. *Linden,* 113 *N. J. L.* 188. Zoning restrictions upon a district must be founded upon a need of the community and to carry out the policy of the zoning statutes. *Appley* v. *Bernards Township,* 128 *Id.* 195.

The question presented is whether this amending ordinance arbitrarily and unreasonably changes the zoning restriction of an isolated area in the midst of an inconsistent neighborhood. Westfield is a residential town, ninety per cent. of which is zoned for one-family homes. Its business and light industrial districts flank the Central Railroad of New Jersey, which splits the town in half. Residence "B" districts in general surround those less restricted zones.

The area in question is approximately 1,800 feet from the nearest residence "B" zone. The mere fact that it is so separated is not fatal. Due to the intervening one-family-house developments the previously designated residence "B" zone could not be extended to this area.

The action taken by the Town Council was cautious, after extensive hearing and full consideration of objections. The need for additional housing is common knowledge. The instant property was selected for its particular suitability as to size and location. There are no homes on the tract. Furthermore, this change was intended to preserve property values by creating a buffer against the less restricted areas of the adjacent township.

The substantial approval by neighboring property owners and the expert opinion favoring this amendment are significant. The objections of a number of property owners are not overlooked but the primary consideration in the enactment of zoning restrictions is the interest of the community at large.

It is presumed a zoning ordinance is reasonable in its application. *Repp* v. *Shahadi*, 132 *N. J. L.* 24; *Yoemans* v. *Hillsborough Township*, 135 *Id.* 599. The judgment of the Town Council, being legislative in nature, should not be interfered with unless arbitrarily or unreasonably exercised. The instant ordinance complies with the zoning statutes and upon examination of all the facts this court cannot determine it to be arbitrary or unreasonable.

Writ dismissed.