MONMOUTH LUMBER COMPANY, A BODY CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND BENJAMIN HARVEY, BUILDING INSPECTOR OF THE TOWNSHIP OF OCEAN, DEFENDANTS-RESPONDENTS.

Argued January 28, 1952—Decided February 14, 1952.

*Mr. William R. Blair, Jr.*, argued the cause for the plaintiff-appellant (*Messrs. Parsons, Labrecque, Canzona & Combs*, attorneys).

*Mr. Henry H. Patterson* argued the cause for the defendants-respondents.

The opinion of the court was delivered by

BURLING, J. This is an appeal from a judgment of the Superior Court, Law Division, Monmouth County, dismissing the complaint of Monmouth Lumber Company, a New Jersey corporation (hereinafter referred to as the plaintiff), whereby plaintiff sought review of the validity of two zoning ordinances enacted by the governing body of the Township of Ocean, a municipal corporation of this State, and review of a resolution of the Ocean Township Committee which effected the rejection by that body of a variance sought by the plaintiff and recommended by the local board of adjustment. The parties defendant are the said Township of Ocean and one Benjamin Harvey, Building Inspector of the Township of Ocean (hereinafter collectively referred to as the defendants). The appeal was addressed to the Superior Court, Appellate Division, but prior to hearing there, certification was granted upon our own motion.

The controversy resulting in this appeal involves lands and premises one and one-half acres in area, owned by the

plaintiff, situate between Grant and Sherman Avenues, adjoining the right of way of the New York and Long Branch Railroad Company, in the Township of Ocean, County of Monmouth, and State of New Jersey, more particularly designated as Lot 1, Block 23, on the tax assessment map of said township. Under the zoning ordinance in effect at the time the plaintiff acquired title to the same on April 26, 1946, the premises in question were in an industrial zone of 45 acres in area. The zoning ordinance establishing that industrial zone was adopted on June 6, 1930. On February 20, 1946, the plaintiff secured a building permit, valid for 90 days, for the construction of one office, one "Transit Mix Plant building," and one garage. The office and transit mix plant were completed on May 13, 1946, and operation thereof commenced June 7, 1946, and still continues. The garage was not erected. On April 5, 1948, the township committee adopted an amendment to the 1930 zoning ordinance, by which amendment all of the industrial area above mentioned was rezoned as a Class A residential district. On April 1, 1949, the plaintiff made application for permission to erect, on the premises in question, a garage building 30 feet wide, 80 feet long, and one story or 16 feet in height. This was denied by the township building inspector and plaintiff appealed to the township board of adjustment. The board of adjustment, after a hearing, on July 7, 1949, adopted a resolution recommending to the township committee that the plaintiff's "application" for "an exception or variance" be granted, to permit the construction and use of the garage plaintiff desired to erect, provided it be used for no other purpose than that of storing and housing trucks. On July 18, 1949, the township committee adopted a resolution whereby the aforesaid recommendation of the board of adjustment was denied. The plaintiff filed a complaint on August 17, 1949, in the Superior Court, Law Division, seeking to have the amendatory ordinance of April 5, 1948, set aside insofar as it purported to change the classification of the area wherein plaintiff's property was situate from "Indus-

trial" to "Class A residential," to have said amendatory ordinance set aside insofar as it affected particularly the property of the plaintiff, to set aside the resolution of the township committee of July 18, 1949, denying the recommended variance, and to require the defendant Benjamin Harvey, Building Inspector of the Township of Ocean, to issue a building permit for the garage aforementioned. Thereafter, on November 7, 1949, the township committee adopted a further ordinance which reclassified the area so that plaintiff's premises thereafter lay partially in a zone E residential district and partially in a zone C residential district. The plaintiff thereupon, on December 9, 1949, filed a supplemental complaint seeking the additional relief of the setting aside of the ordinance of November 7, 1949. The facts stated in the foregoing recital were stipulated by counsel for the parties in the pretrial order and at the trial of the matter. The Superior Court, Law Division, after trial, entered judgment of dismissal on April 9, 1951, in favor of the defendants and against the plaintiff. The plaintiff noticed its appeal from the whole of said judgment to the Superior Court, Appellate Division. Prior to hearing there, as hereinbefore noted, the appeal was removed to this court upon certification granted upon our own motion.

The questions involved on this appeal include constitutionality of the aforementioned ordinances of April 5, 1948, and of November 7, 1949, their conformity with statutory provisions, and the validity of the rejection on July 18, 1949, by the township committee, of the board of adjustment's recommendation of variance. Consideration of the law applicable to these questions under the circumstances of this case requires an affirmance of the judgment of the court below.

It is well recognized that a zoning ordinance is one of several types of regulation of property by local government, all of which are expressions of the police power. See for example *Brandon v. Montclair,* 124 *N. J. L.* 135, 142 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940).

Further, it is settled that an exercise of the police power by a legislative body is not rendered unconstitutional merely by the fact that its enforcement works curtailment of private activity, even to the point of prohibition thereof. *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200, 206 (1949); *State v. Mundet Cork Corp.,* 8 *N. J.* 359 (1952); *Welsh v. Morristown,* 98 *N. J. L.* 630, 634 *(Sup. Ct.* 1923), affirmed 99 *N. J. L.* 528 *(E. & A.* 1924); *Northwestern Laundry v. Des Moines,* 239 *U. S.* 486, 60 *L. Ed.* 396, 401 (1916). Aside from the necessity for compliance with specific constitutional and statutory provisions proscribing the limits of the exercise of the power, the requisite test for validity of a municipal ordinance of this nature is that it be reasonable, and the burden of proof is upon those who attack the ordinance to show that it is unreasonable in the relation of the regulation to the health, safety, morals, or the general welfare of the community. *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200, 206 (1949); *State v. Mundet Cork Corp.,* 8 *N. J.* 359 (1952); *Brandon v. Montclair, supra* (124 *N. J. L.* at *p.* 149).

■ The right of municipalities in this State to enact and enforce zoning regulations was provided by *N. J. Const.* 1844, *art. IV, sec. VI, par.* 5 (added by amendment Oct. 18, 1927), and is preserved and amplified by *N. J. Const.* 1947, *art. IV, sec. VI, par.* 2, and further we are now required to construe constitutional and statutory provisions liberally in favor of municipal corporations formed for local government. *N. J. Const.* 1947, *art. IV, sec. VII, par.* 11. Compare *R. S.* 40:55–2. Compare *State v. Mundet Cork Corp., supra.*

The plaintiff recognizes the constitutional validity of zoning as an exercise of police power, and it appears from the arguments advanced that the plaintiff's objections are a combination of protestations against the alleged unreasonableness of the ordinances subjected to review on this appeal and assertions that the police power was not exercised by the

defendant township within the confines of the pertinent statutory provisions.

Zoning ordinances were authorized by *L.* 1928, *c.* 274, *sec.* 3, *R. S.* 40:55–30, which included the right to regulate and restrict the location and use, and extent of use, of buildings for trade, industry, residence or other purposes. *L.* 1948, *c.* 305, *p.* 1221, *sec.* 1 (effective August 9, 1948), amended *R. S.* 40:55–30, *supra,* but there is no contention that this amendment has any bearing upon the issues involved in this appeal. The theory and purpose of zoning in this State has oft been considered, and stems from the above adverted to constitutional permission and the statutory declaration. *R. S.* 40:55–32 provides:

"Such regulations shall be in accordance with a *comprehensive plan* and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or *the general welfare;* provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. *Such regulations shall be made with reasonable consideration,* among other things, *to the character of the district* and its peculiar suitability for particular uses, *and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."*

The evidence in the record before us shows that the ordinances in question were adopted as a comprehensive plan to conserve property values throughout the township and to encourage the most appropriate use (determined by the planning board and the township committee to be residential use) therein. During recent years the growth of the municipality was and still is residential and not industrial, and the area was a "very lovely section" including "very fine homes" and "beautiful trees." The only remaining industrial property in the zone in question was that of the plaintiff and "a lot of new homes had been built" and the area "was one of the few areas where you had land with trees and open spaces where people could build homes, nice homes." There was also testimony that the area in question

was not suitable for industrial purposes because of its isolated situation in the midst of a residential district. The plaintiff introduced evidence that was to some extent conflicting with the foregoing. We do not find sufficient in the record to show that the plaintiff in this case has overcome the presumption of reasonableness with which the law surrounds a zoning ordinance. On the contrary, the preponderance of the evidence shows faithful compliance with the theory and purposes of the statute, *R. S.* 40:55–32, *supra.* Compare *Duffcon Concrete Products v. Borough of Cresskill,* 1 *N. J.* 509, 515 (1949), wherein this court held:

"* * * Where, as here, there exists a small residential municipality the physical location and circumstances of which are such that it is best suited for continuing residential development and, separated therefrom but in the same geographical region, there is present a concentration of industry in an area peculiarly adapted to industrial development and sufficiently large to accommodate such development for years to come, the power of the municipality to restrict its territory to residential purposes with ample provision for such small businesses, trades and light industries as are needed to serve the residents, is clear. *Cf. Hamlett v. Snedeker,* 246 *App. Div.* 758, 283 *N. Y. S.* 906 (*2d Dept.* 1935)."

The plaintiff broaches two further arguments against the validity of these ordinances. The first of these contentions is that having once adopted a zoning ordinance and established a zone plan for that portion of the municipality in which plaintiff's premises are located, and having maintained that plan in effect for 18 years, the township committee could not properly reclassify the zones thereby established unless substantial changes had taken place therein as to warrant such reclassification. This was the rationale of *Appley v. Bernards Tp.,* 128 *N. J. L.* 195 (*Sup. Ct.* 1942), and *Ingannamort v. Fair Lawn,* 133 *N. J. L.* 194 (*Sup. Ct.* 1945), but in both those cases the facts showed that the character of the districts in question had undergone no change and remained devoted to and more suitable for the uses for which they were originally zoned. As above indicated, the converse is the situation here. Further it must

be pointed out that rezoning is directly contemplated by legislative enactments relating to planning boards. *R. S.* 40:55-9 provides that the governing body may by ordinance "whenever and as often as it may deem it for the public interest, change or add to the official map of the municipality," the "official map" being that adopted by the municipality under *R. S.* 40:55-8 as a result of a master plan made and adopted by the planning board under *R. S.* 40:55-6, which plan "shall show the board's recommendations for the development" of the territory of the municipality, and before making a change shall refer the matter to the planning board for its recommendation. Such was the course pursued by the defendant township in this case. *R. S.* 40:55-10 significantly provides for "studies of present conditions and future growth of the municipality, due regard being taken to its relation to neighboring territory * * * which will * * * best promote health, safety, morals, order, convenience, prosperity and general welfare * * *." Rezoning consistent with the plan recommended by the planning board is authorized by *R. S.* 40:55-19 (the amendment of this section effected by *L.* 1948, *c.* 464, *p.* 1909, *sec.* 7 does not affect the determination of the matter *sub judice*) and also by *R. S.* 40:55-35. The facts adduced at the trial of this action show that the ordinances in question were adopted as the direct result of the studies and recommendations of the planning board of the township, which board had been created in January, 1948, in pursuance of the statutory authority above adverted to. Since the rezoning was accomplished in the manner ordained by the statute, and was justified by the changed conditions existing in the area and neighboring communities, namely rapid growth of residential use and abandonment of industrial use, as hereinbefore discussed, there is no merit in plaintiff's argument that reclassification after 18 years was not warranted.

The plaintiff's second additional argument is that the defendant township's 1948 ordinance was an invalid exercise of police powers under the zoning statutes because it was

"freezing" or "stop gap" legislation adopted to permit delay in preparation of additional zoning legislation. In the case at hand the 1948 ordinance was enacted by the governing body of the defendant township in April, 1948, following recommendations made by the planning board, after preliminary survey and study. Such action is within the intent and purpose of the statutes relating to planning, *R. S.* 40:55–1 *et seq.*, particularly in view of the constitutional and legislative mandates (*N. J. Const.* 1947, *art. IV, sec. VII, par.* 11, *supra,* and *R. S.* 40:55–2, *supra*) that such laws as these shall be construed "most favorably to municipalities." It is entirely consistent with the theory of planning to provide, after study of the conditions of the community, a means of preventing changes in the character thereof which might be opposed to the theory of planning and zoning pending the formulation of a detailed and complete "comprehensive plan" for the municipality, either new or in substitution for an outmoded plan. Therefore we hold that the 1948 ordinance was validly enacted.

 Having determined that the 1948 and 1949 ordinances were valid we move to consideration of the validity of the resolution of the governing body of the defendant township rejecting the recommendation of the zoning board of adjustment. As stated earlier in this opinion, the zoning board had recommended that the plaintiff be granted a variance to permit the construction and use of a garage for its trucks. The authority for action by both the board of adjustment and the governing body of the municipality in this respect stems from *R. S.* 40:55–39*d*, which provided (and as amended in 1948 and 1949 still provides) for recommendation of variance by the board of adjustment to the governing body, and approval or *disapproval* of that recommendation by the governing body. Assuming, but not deciding, that the determination of facts made by the board of adjustment is conclusive (if supported by the evidence) on the governing body, certainly the power to make new conclusions or to draw new inferences from those facts is incidental and essential to

the power vested in the governing body to disapprove the recommendation. It is to be noted that this section of the statute (*R. S.* 40:55–39*d*) differs in this respect from *R. S.* 40:55–39(*c*) whereby the board of adjustment is empowered to authorize a variance under specified circumstances and the governing body is not empowered to act either in approval or in disapproval thereof. This distinction is implicit in the statute and has been adverted to by this court in *Oliva v. City of Garfield,* 1 *N. J.* 184, 189 (1948) wherein we held that a determination whether a variance is to be allowed is "* * * a function committed by the zoning act to the sound discretion and experienced judgment of the board of adjustment, controlled by law and reason, *and supervised under stated conditions by the governing body of the municipality * * *.*" (Emphasis supplied.) It is settled that the exercise of this discretionary authority of the local governing body may not be set aside by the courts "unless there has been an abuse of the delegated legal discretion." *Oliva v. City of Garfield, supra* (*p.* 189); *Brandon v. Montclair, supra* (124 *N. J. L.,* at *page* 145).

The crux of the matter, as it relates to the variance sought by the plaintiff, is therefore whether the municipal governing body of the defendant township abused its discretion in disapproving the variance recommended by the board of adjustment. The record before us, in the light of the statute, shows no such abuse. *R. S.* 40:55–39*d,* as worded prior to the 1948 and 1949 amendments, has been construed to require proof of unnecessary hardship. See, for example, *Nat. House & Farms Ass'n., Inc., v. Bd. Adjustment, Oakland,* 2 *N. J.* 11, 14 (1949); *Stolz v. Ellenstein,* 7 *N. J.* 291 (1951). In this case we are presented with a situation governed by *R. S.* 40:55–39*d* as amended by *L.* 1948, *c.* 305, *p.* 1223, *sec.* 6, and *L.* 1949, *c.* 242, *p.* 779, *sec.* 1, the latter of the amendatory acts having become effective May 25, 1949, which was prior to the date (July 7, 1949) on which the board of adjustment acted upon the plaintiff's application for permission to erect and use the garage it desired

in connection with its transit-mix business. In general it is to be remembered that the spirit of the law is to restrict nonconforming uses, *Lumund v. Bd. of Adjustment of the Borough of Rutherford,* 4 *N. J.* 577, 585 (1950), and a request for an enlargement of a nonconforming use is a request for a variance, *Nat. House & Farms Ass'n., Inc., v. Bd. Adjustment, Oakland, supra,* at *p.* 13. Hence the applicability of *R. S.* 40:55–39(*d*), *as amended, supra,* is apparent. The amendatory acts indicate a legislative intent to withdraw from *R. S.* 40:55–39*d* the application of the requirement for proof of "unnecessary hardship" and to substitute therefor discretionary authority to grant a variance "in particular cases and for special reasons." This is indicated by the fact that in subsection c (as amended) the Legislature retained the words "exceptional and undue hardship" where the board of adjustment is empowered to *authorize* a variance, but in subsection d (which formerly contained no legislative expression of the basis necessary for the board's *recommendation* of variance to the governing body) the Legislature inserted the words "in particular cases and for special reasons." It is settled that statutes should be accorded that construction which will give effect to every word expressed by the Legislature therein. This requires construction of *R. S.* 40:55–39, as amended, *supra,* to mean that where the board of ajustment may *authorize* a variance there must be proof of "exceptional and undue hardship," but where it may *recommend* a variance to the governing body of the municipality it may do so, in particular cases, "for special reasons" which may include, but do not necessarily require, proof of unnecessary hardship as a special reason warranting a variance. In these latter instances, however, the governing body has discretionary power to approve or disapprove the recommendation. In the present case the board of adjustment determined that the plaintiff had presented "special reasons" warranting the recommendation of the variance sought. These special reasons appear to have included facts which indicated to the board that

denial of the variance would result in exceptional and undue hardship to the plaintiff, and that allowance of the variance would benefit the general welfare of the Township of Ocean. The township committee, in denying approval of the recommendation, as it was empowered to do by the statute, found that the approval of the variance would result in further depreciation of property values in the area, that it would be against the best interests of the Township of Ocean to expand the industrial uses in the area, and incidentally that the evidence did not support the plaintiff's claim of undue hardship as a "special reason" for variance in this particular case. The gist of the plaintiff's argument and proofs in this respect is that the continued storage of its vehicles in the open constitutes an undue hardship. The proposed new building would constitute an enlargement of the nonconforming use of plaintiff's property. Whether the denial of the variance sought would work undue hardship, and whether the plaintiff's desire to house its vehicles is a sufficient "special reason" for a grant of the variance sought, are questions upon which there may be a difference of opinion, and whether the open storage of the vehicles is less objectionable than the proposed building is a matter for the judgment of the municipal authorities. A nonconforming use may not be enlarged or radically modified simply because the new use would be "no more harmful" than the old to the adjacent landowners. *Lynch v. Hillsdale*, 136 *N. J. L.* 129, 133 (*Sup. Ct.* 1947), affirmed on opinion below, 137 *N. J. L.* 280 (*E & A.* 1948). Further it is settled that the welfare of a community will not be sacrificed for the purpose of permitting the most profitable use of premises. *Berdan v. City of Paterson*, 1 *N. J.* 199, 205 (1948). In the light of the proof of the changed character of the district, the abandonment of industrial uses and the rapid growth of residential uses, which prompted the rezoning of the area in question, we find that the plaintiff's evidence falls short of proof of abuse of discretion by the township committee in its disapproval of the recommended variance.

For the reasons stated the judgment of the Superior Court, Law Division, is affirmed.

WACHENFELD, J. (dissenting). I cannot agree with the conclusions reached by the majority and feel my views should be at least briefly stated.

The property in question stretches for about 500 feet along the double tracks of the New York & Long Branch Railroad and is approximately 132 feet deep. The plaintiff bought the property in April, 1946, after it had been granted a building permit for the transit mix plant, an office building and a garage. The permit was issued pursuant to an ordinance which had been in effect for 16 years, zoning this land for industrial purposes. It is apparent, I think, that the value of the land to the company was predicated upon business use which was then permitted under the ordinance in existence.

The plant commenced operations in June, 1946, and is still being used. Although it had a permit to do so, the company did not construct the garage but stored some of its trucks in the open within the yard limits of the plant. It now seeks to build a garage to house these trucks and afford them protection from the elements. Permission is denied under the 1949 zoning ordinance constituting the area in question as residential.

Is this ordinance a reasonable exercise of the zoning power in so far as it applies to the premises in question? The authority of the municipality to enact zoning ordinances to lessen congestion in the streets, secure safety from fire, panic and other dangers, promote health, morals and general welfare, provide adequate light and air, prevent the overcrowding of land and buildings and to avoid undue concentration of population, is conferred by *R. S.* 40:55–32 and is not here questioned. The query, rather, is whether or not the zoning of the plaintiff's land as residential and consequently prohibiting it from building a garage to house its trucks may reasonably be considered to abide by the salutary

aims and purposes recited in the statute. The net effect of the ordinance, so far as it relates to the plaintiff's property, is to deny in part the only appropriate use it can make of the land, which use was consented to and permitted by an ordinance in effect when the purchase of the property was made and by the building permit.

In *Duffcon Concrete Products v. Cresskill,* 1 *N. J.* 509 (1949), cited in the majority opinion, we emphasized the power of a municipality to conserve property values and to encourage the most appropriate use of land with regard to physical, economic and social conditions prevailing within the municipality and the region surrounding it. That power was exercised by the municipality when the 1930 ordinance zoning the plaintiff's land for industrial use was enacted.

I do not find from the record that a great residential development in this immediate area has taken place. The aerial photograph taken in December, 1950, shortly before the present action was tried and long after the adoption of the 1949 ordinance and which was introduced in evidence, shows that within the township the property in question is still surrounded by several acres of woodland and open fields and that no dwellings thereon have been constructed.

The plaintiff's reliance upon the old ordinance and the invitation to proceed with erection of its buildings and plant as expressed in the building permit granted by the township was reasonable and lawful. At the time the plaintiff applied for a new permit to build the garage which had already been authorized, the character of the neighborhood had still not physically been much changed although it had been designated as a residential zone. There is no evidence of congestion of streets, deprivation of light and air, or undue concentration of population presently existing or reasonably foreseeable underlying or justifying the restriction placed upon the plaintiff's use of its property.

I am compelled to the thought that the 1949 ordinance, under the circumstances here presented, in so far as it applies to the property in question, appears to be unreason-

able and arbitrary and unrelated to the aims and purposes set forth in the zoning act.

I have grave doubts, too, that the building of the garage can be termed an expansion of a nonconforming use. The law in regard seems to be well settled in *Kensington Realty Corp. v. Jersey City,* 118 *N. J. L.* 114 (*Sup. Ct.* 1937), affirmed 119 *N. J. L.* 338 (*E. & A.* 1938), where the court said:

"We think it clear that the 'continuance of a non-conforming use' is a continuance of the same use and not of some other kind of use."

Here there is the same use and no change is made either in kind or in quantity. There is no increase in area or production of the manufacturing plant, nor would the granting of the garage permit create an increase or an expansion. Putting the trucks under cover instead of leaving them in the open constitutes no enlargement or change in the plaintiff's business. The facility sought is incidental to the plant as it is now being lawfully operated. The attempt at conservation of costly machinery is but an adaptation of a sound business practice. The trucks in question apparently can be stored upon the property and used in the same manner but without garage facilities, the denial of which would seem to work a hardship.

The township, I believe, should be ordered to issue the permit and I would vote to reverse.

Mr. Justice OLIPHANT authorizes me to state that he concurs in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER and BURLING—4.

*For reversal*—Justices OLIPHANT and WACHENFELD—2.