SCARBOROUGH APARTMENTS, INC., A NEW JERSEY CORPORATION, REALTY INVESTORS, INC., A NEW JERSEY CORPORATION, F. A. R. REALTY CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFFS, AND GEORGE K. McKENZIE, EDWARD EUGENE McKEEVER, MARY T. McKEEVER, PLAINTIFFS-RESPONDENTS, v. THE CITY OF ENGLEWOOD, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued March 3, 1952—Decided March 24, 1952.

*Mr. LeRoy B. Huckin* argued the cause for appellant.

*Mr. Walter D. Van Riper* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J. The defendant's zoning ordinance was set aside in so far as it affected the plaintiffs' property.

The land is known as Lots 3, 26C and 27 in Block 215 on the assessment map of the City of Englewood and is all located in one block on the east side of Grand Avenue between Madison Avenue on the north and VanNostrand Avenue on the south. There are six properties in the block fronting on Grand Avenue, including the property of the plaintiff Mary T. McKeever, on which there is erected an old one-family residence. The parcel on the corner of Grand Avenue and Madison is occupied by a gas station and repair shop. On another parcel at the corner of Grand and VanNostrand Avenues owned by the plaintiff George K. McKenzie, there is a small building used as a real estate office. Of the three remaining parcels, two have residences and one is vacant land owned by the plaintiff Edward E. McKeever.

The original zoning ordinance of 1923 placed this block, together with the corresponding block on the opposite side of Grand Avenue, in the business zone. It remained so during various revisions until 1949, when by an amendment of the zoning ordinance the entire block, which had been in a business zone for 26 years, was taken out of that classification and declared a residential area. The other side of the street, however, continues as a business zone. The net result is Grand Avenue, in this particular block, is zoned for business on one side and for residence on the other.

Grand Avenue is a much traveled and a very busy highway. It accommodates 28 bus lines and traffic is heavy and constant.

This action was instituted to have the ordinance declared void in so far as it affects the plaintiffs' properties. Scarborough Apartments, Inc., Realty Investors, Inc., and F. A. R.

Realty Company, owners of other properties in the city whose classification was changed by the 1949 amendment, were originally parties-plaintiff but took a voluntary dismissal.

The Law Division found:

"These restrictions are unnecessary and unreasonable, and that the ordinance, in so far as these people are concerned, is unconstitutional; not within the purview of the statute, and it is unreasonable, arbitrary and capricious,"

and entered judgment in favor of the remaining plaintiffs setting aside the amended ordinance as it affected them.

The Appellate Division affirmed the disposition made in the trial court, declaring the plaintiffs had met the burden of showing the amended ordinance was unreasonable and arbitrary in its effect upon their property, saying:

"The zoning on one side of the street for business and the other side for residential uses, in this particular case, constitutes a distinct disservice to the policy of the statute. The plaintiffs' properties are in a general area much more devoted to business than to residence use. The municipality cannot lift them out of a natural use merely because its experts think it would be better to do so."

On our granting its petition for certification, the city appeals, contending it "has the power to zone particular sections of a municipality based on past and present use of the properties and power to zone in relation to a division of districts on either side of the street," and that the zoning ordinance in question was a proper exercise of power by the City of Englewood in so far as it related to the properties of the plaintiffs.

The right to zone is not disputed. Admittedly local governments have been given a broad constitutional and statutory authority in exercising this prerogative, but it is asserted the zoning ordinance, valid in its generally comprehensive scope, is invalid as it applies to the lands in question.

Our Constitution gives to municipalities a right to adopt zoning ordinances pursuant to general laws enacted by

the Legislature and it enjoins a liberal construction in their favor. *Edwards v. Mayor, etc., Borough of Moonachie,* 3 *N. J.* 17 (1949). There is a presumption such an ordinance is reasonable and the burden of proof is on the moving party to prove otherwise. *Repp v. Shahadi,* 132 *N. J. L.* 24 (*Sup. Ct.* 1944); *Yeomans v. Hillsborough Tp.,* 135 *N. J. L.* 599 (*Sup. Ct.* 1947); *Crow v. Westfield,* 136 *N. J. L.* 363 (*Sup. Ct.* 1947); *Monmouth Lumber Co. v. Twp. of Ocean,* 9 *N. J.* 64 (1952).

 The community has a broad power reasonably to achieve the purposes sought by zoning, "to provide a balanced and well-ordered scheme for all activity deemed essential to the particular municipality," nor will the welfare of the community "be sacrificed for the purpose of permitting the most profitable use of premises." *Berdan v. City of Paterson,* 1 *N. J.* 199 (1948); *Monmouth Lumber Co. v. Township of Ocean, supra.* Nevertheless, "the specific requirement of a 'comprehensive plan' is intended to avoid an arbitrary, unreasonable, or capricious exercise of the zoning power." *Speakman v. Mayor & Council of North Plainfield,* 8 *N. J.* 250 (1951).

In *Collins v. Bd. of Adjustment of Margate City,* 3 *N. J.* 200 (1949), Justice Heher said:

"The touchstone of the reasonableness of the control is to be found in the relation of the regulation to the health, safety, morals, or the general welfare of the community. If there be a want of rational relation between the use restriction and one or more of the considerations within this general category, the regulation must be struck down as arbitrary and an invasion of the constitutional right of private property."

Englewood first enacted a zoning ordinance in 1923. It was superseded in 1928 by one adopted under the constitutional amendment of the preceding year. This was substantially amended in 1935, and in 1948 the municipality requested the planning board to modernize the zoning ordinance to meet the changing conditions in the city. Experts were employed, a prolonged study was made, and after public

hearings a new zoning regulation was adopted in June, 1949. It embraced the entire city and made changes in many sections.

The particular residential district here in issue, designated as Residence District No. 4, permitting the construction of one-, two- and multiple-family dwellings, has its frontage on Grand Avenue and extends for a depth of 135 feet. Across the street the land is classified for a depth of 140 feet as Business District No. 2, and the property beyond is a light industrial district, the most unrestricted use permitted in the city. The evidence indicates the character of the immediate neighborhood is overwhelmingly business and is increasingly being devoted to that activity.

The inquiry is whether or not the municipality acted unreasonably and arbitrarily in changing the plaintiffs' property from a business to a residential zone. It is primarily a factual equation and the unanimity and accord of the trial court and the Appellate Division finding such to have been the case, while not controlling, is at least significant.

The evidence, we think, supports their decision. The narrow strip of land which for 26 years was zoned for business is partially devoted to that use and is located opposite property which is still so classified. On the corresponding block on the other side of Grand Avenue there is an auto sales lot, a gasoline station, a residence, a grocery store, a diner and a vacant lot. The rear line of these properties borders on land dedicated to industrial purposes and the development on both sides of the street, over the years, shows a marked leaning to the business use for which the land has so long been zoned.

In *Appley v. Township Committee of Bernards Twp.*, 128 *N. J. L.* 195 (*Sup. Ct.* 1942), the court held an ordinance would be void if it "passes the bounds of reason and assumes the character of a merely arbitrary *fiat*," and that an ordinance may not, "under the guise of the zoning power, impose restrictions that 'are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities.' "

188

Referring to similar difficulties encountered, Justice Heher said:

"The zoning of one side of a street for business and the other side for residential uses may in certain circumstances constitute a distinct disservice to the policy of the statute. * * * Certainly, this is so where, as here, what is deemed unfair discrimination in this regard is but partially eradicated, and lands contiguous to the rezoned section, and having a common street frontage, remain under the restrictions laid upon a residential use district."

Such was the conclusion of the Appellate Division here. The phraseology used in expressing itself was borrowed from the *Appley* case, *supra*.

 *McQuillan on Municipal Corporations* (3d ed.), vol. 8, sec. 25.91, dealing with streets as boundaries, points out the considerable difference of opinion as to the validity of placing one side of the street in a residential district and the other side in a business district, whatever the circumstances may be. In discussing his conception of the majority rule, the author says:

"Generally in zoning territory, it has been said, the line should be so fixed as to avoid the making one side of a main artery of travel purely residential where the opposite side of the street is already so uniformly used for business purposes as to have established its character in that regard, because so to do will almost inevitably lead to such unreasonable destruction of values as to be confiscatory. The rule is applicable where the street divides two municipalities, since despite their independent governmental functioning the zoning results are the same. Thus, it has been held that residential zoning of one side of a main through street by a municipality is unreasonable, where the other side in another municipality is zoned and used for business and where there also are business uses on the side zoned as residential."

Zoning one side of a street for purposes different from those prevailing on the other side is not *per se* illegal, but the directive must be "in accordance with a comprehensive plan and designed for one or more" of the purposes enumerated in the statute. "Such regulations shall be made with reasonable consideration, among other things, to the character of the

district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." *R. S.* 40 :55–32. *Appley v. Township Comm. of Bernards Twp., supra.*

In *Ingannamort v. Borough of Fair Lawn,* 133 *N. J. L.* 194 *(Sup. Ct.* 1945), the court remarked:

"Manifestly, the prosecutors' properties are in an area much more devoted to business than to residence use. The municipality cannot lift them out of a natural use merely because its expert thinks it would be better so to do. It has no power to close its eyes to the existing use and say it would be better otherwise."

The trial court and the Appellate Division both found the ordinance to be unreasonable and arbitrary as it affects the properties in question. The record before us and the testimony submitted, as we construe it, confirm such a determination and we find ourselves compelled to agree, for the reasons herein stated; with the conclusions reached below.

The judgment is affirmed.

BURLING, J. (dissenting). The right to rezone was recently examined and sustained by this court in *Monmouth Lumber Co. v. Township of Ocean,* 9 *N. J.* 64 (1952). Abandonment of business use for which the area in question was originally zoned and residential growth in that area were elements involved in the decision upholding the zoning ordinance in that case. Those factors seem present here. The revision of the general planning of the community under *R. S.* 40 :55–1, etc., was also reviewed in the *Monmouth Lumber Co.* case, *supra,* and is applicable here. Also *R. S.* 40 :55–35 provides that the boundaries of zones may be changed. Here the boundary of the residential area was changed to include as much as possible of the area east of Grand Avenue, to prevent a further encroachment of business and light industry. The zoning effort in question appears reasonably related to the lessening of congestion in

the streets and promotion of the general welfare of the community, with reasonable consideration to the character of the district and its suitability for particular uses and with a view of conserving the value of property and encouraging the most appropriate use of land throughout the municipality. *R. S.* 40:55–32.

Much of the oral argument of the plaintiffs was addressed to the fact that Grand Avenue is heavily traveled and therefore should be zoned for business. To so rule would be to open every heavily traveled street to business, a result inimical to the theory of zoning. So likewise with the argument that if one side of a street is zoned for business, the other side should be so zoned. As stated in the majority opinion, zoning of opposite sides of a street for different uses is not *per se* illegal but must relate to the statutory purpose.

It is my conclusion that in this case, upon the application of the facts to the pertinent legal principles, the judgment of the Superior Court, Appellate Division, should be reversed and the zoning ordinance of the City of Englewood should be sustained in its effect upon the plaintiffs' property. Zoning is an exercise of the police power and its exercise is not rendered unconstitutional merely by the fact that it works curtailment of private activity; the burden of proof of the unreasonableness of the exercise of this power is upon those who attack it. *Monmouth Lumber Co. v. Township of Ocean, supra.*

In support of this conclusion attention is invited to the following:

Six owners of real property situate in the City of Englewood initiated this action to test the validity of a 1949 amendment to the city's zoning ordinance. This amendment was comprehensive, re-zoning much of the area of the city. Of these owners Scarborough Apartments, Inc. (with property situated in Block 116), Realty Investors, Inc. (with property situated in Block 154), and F. A. R. Realty Corporation (with property situated in Block 270) subsequently requested entry of voluntary dismissal, which was granted

by order of the trial court. The remaining plaintiffs, George. K. McKenzie, Edward Eugene McKeever and Mary T. McKeever, were owners respectively of. Lots 3, 26C and 27 in Block 215. Lot 3 is on the northeast corner of Grand and Van Nostrand Avenues, with a frontage of 46.32 feet on Grand Avenue; Lot 27 is an interior lot, with a frontage of 89.04 feet on Grand Avenue. Lot 26C is likewise an interior lot, fronting 61.12 feet on Grand Avenue. Lot 3 contains a small real estate office; Lot 27, a residence; and Lot 26C is vacant. The remaining lots in Block 215 are: Lot 1, 46.24 feet frontage on Grand Avenue, residential; Lot 2, 46.32 feet frontage on Grand Avenue, residential; Lot 26D, 129.94 feet frontage on Grand Avenue, a corner lot (Madison and Grand Avenues), contains a gasoline service station and small repair shop.

The evidence shows that Block 215 is located within a large residential area which exists with few exceptions for the entire length of Grand Avenue, in the City of Englewood, along the east side of that thoroughfare. The west side of Grand Avenue is devoted to business and light industry to a fair degree, although a considerable portion is zoned and used for residential purposes and residential use continues even in the business zones. Much of the area of the city west of Grand Avenue is zoned for business and light industry, but the *entire* area of the city east of Grand Avenue is residential (with a few exceptions on the east side of Grand Avenue, several blocks distant from Block 215). Block 215 is residential in character. The lots fronting on Grand Avenue are themselves more residential than business in character (three residences, one gas station and repair shop, one small real estate office and vacant land). Plaintiffs' witness Wilma Mitchell (the real estate agent whose office is mentioned above), mother-in-law of the plaintiff Edward McKeever (and apparently owner of an equitable interest in his property), testified that the three residences above mentioned have been .there many years; that one is lived in by Edward McKeever; that another had been sold recently and

was still in use as a residence. She further testified that she had made no attempt to sell any of these properties for business purposes, and that there have been no sales for business on that side of the street because the "time wasn't ripe." She admitted that in neighboring areas along the east side of Grand Avenue it has been developed by residential and apartment houses, that in the areas to the rear of the east side of Grand Avenue residences had been constructed recently (about 200 feet away), and that in a nearby portion of this general area a great many new residences had been built "within the last year or so." Plaintiff Edward McKeever testified he entered into the purchase of his residence for his own occupancy, although he claimed to have known it was "unsuitable for living purposes." He admitted that the three residences in Block 215 had always been occupied as homes and were still occupied as homes; that he continued to occupy his premises as a home; that the people next to him had invested a "lot of money" in their home. He also testified to considerable residential growth in the general area. Borg, a real estate expert called by plaintiffs, testified that many residences exist "east of the newly zoned property"; that "the time has not arrived economically when this property can be employed for business purposes. The expansion hasn't occurred to that point." He indicated by his testimony that he believed the question of different zoning on opposite sides of the street depended on the circumstances of the particular area. He corroborated the other evidence as to the preponderance of residential use in Block 215. He admitted that business use in this block was "hazardous today." Moon, a defense witness, testified that within 300 feet of the properties in question ten new homes had been built during the last year, and on the opposite side of Madison Avenue (nearby) 16 new dwellings had been authorized; that all of these were one-family houses. Dederick, a real estate expert who testified for the defendant, described these new homes as "rather attractive" and otherwise corroborated Moon. Swan, city planner, testified (with-

out objection) that "there is no demand for stores or businesses on the other side of the street" (referring to the east side of Grand Avenue); he corroborated the testimony of Moon and Dederick. He further testified without objection: "There is no business value in traffic, as such. In fact, heavy traffic can kill a street for business purposes. And to have its stores in this particular block, where you come off of Route 4, it would mean parked cars on the highway; cluttering it up, and holding back traffic"; he discredited the denomination of the real estate office as "business use," saying that it is not unusual to permit such offices in residential zones to encourage development. Swan testified that the property in question had never been put to business use.

I do not find sufficient in the record to show that the plaintiffs in this case have overcome the presumption of reasonableness with which the law surrounds a zoning ordinance. The preponderance of the evidence shows compliance with the theory and purposes of the statute, *R. S.* 40:55–32, *supra.*

I am authorized by Mr. Justice Heher to state that he concurs in the views expressed herein.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT and WACHENFELD—3.

*For reversal*—Justices HEHER and BURLING—2.