33 N.J. Super. 205 (1954)
109 A.2d 677
PHILIP MISTRETTA, PLAINTIFF,
v.
THE CITY OF NEWARK, NEW JERSEY, THE BOARD OF ADJUSTMENT OF THE CITY OF NEWARK, NEW JERSEY, AND THE BERKELEY SAVINGS & LOAN ASSOCIATION OF NEWARK, NEW JERSEY, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 9, 1954.
*207 Mr. Abraham Alboum, attorney for the plaintiff.
Messrs. McGlynn, Weintraub & Stein, attorneys for plaintiff, by substitution (Mr. Edward R. McGlynn, appearing).
Mr. Sidney G. Goldberg, attorney for Philip Mistretta.
*208 Mr. Vincent P. Torppey, attorney for defendants City of Newark, New Jersey, and the Board of Adjustment of the City of Newark, New Jersey.
Mr. Ralph H. Jacobson, attorney for defendant Berkeley Savings & Loan Association.
CAFIERO, J.S.C.
This is a proceeding in lieu of prerogative writs wherein it is claimed that the action of the Board of Commissioners of the City of Newark in granting a variance of its zoning ordinance was arbitrary, capricious and unreasonable.
The variance would permit the defendant, the Berkeley Savings and Loan Association, to establish a restricted non-commercial parking area on vacant land in the rear of its building at 86-88 Lyons Avenue, Newark, New Jersey. The building is in a business zone and the proposed parking area is located in a first residence district or zone, and is known as 81-87 Weequahic Avenue.
The variance was granted by the city commissioners after a public hearing, and upon recommendation of the board of adjustment which had also held public hearings. The action of each being pursuant to N.J.S.A. 40:55-39(d).
The resolution of the board of commissioners, which was unanimously adopted, contained the following proviso:
"* * * providing parking be stricted to the hours between 8 a.m. and 5 P.M. on Tuesday, Wednesday, Thursday and Friday of each week and between the hours of 8 A.M. and 7 P.M. on Mondays and that the gates at the Lyons Ave. entrance to the station be locked between the closing and opening hours and on week ends; and further provided there shall be no entrance or exit on Weequahic Ave."
The pretrial order provides that the case is to be submitted on stipulation and briefs; and at the time of its preparation, plaintiff's counsel complained that at the hearing before the board of adjustment he had not been afforded the same opportunity which was given to the defendant, Berkeley Savings and Loan Association, to offer evidence as *209 to parking and traffic conditions; and requested that if the matter of street parking and traffic becomes a vital issue in the case, that he be given an opportunity to produce evidence as to parking and traffic conditions. Leave was granted to him to file a traffic report, to which defendants objected; but counsel has not done so, nor has he explained its absence.
Briefs were submitted, but before the court had announced its opinion in the matter, Sidney G. Goldberg, Esq., who claimed that he represented the plaintiff, Philip Mistretta, filed with the court an affidavit made by Philip Mistretta wherein he stated:
"1. I reside at 93 Weequahic Avenue, Newark, New Jersey, and am the purported plaintiff in the above case.
2. I never authorized Abraham Alboum to institute the above action on my behalf. I never retained Mr. Alboum. Mr. Alboum instituted this action in my name without my knowledge or consent. I have never authorized any attorney or any other person to institute this action.
3. The purpose of this affidavit is to inform the court of the true facts and to have this case dismissed insofar as I am concerned."
In an attempt to avoid confusion on this point, and to have it settled amicably, if possible, the court discussed the matter privately with Mr. Alboum, and it was apparent that Mr. Alboum was familiar with the contents of the affidavit and that he was interested in the litigation beyond his position as attorney for plaintiff. Mr. Alboum stated that he also resided in the area and was strongly opposed to the granting of the variance; whereupon the court suggested that he communicate with Mr. Goldberg and with the attorneys for the defendants, and it was probable that they might consent to have him substituted as the plaintiff in order that the matter could proceed to conclusion on its merits.
Mr. Alboum prepared an order to that effect which was consented to by Mr. Goldberg, as attorney for Philip Mistretta; but it was not consented to by the other parties; and upon learning thereof, the court requested all of the parties to attend in open court.
Philip Mistretta, through Mr. Goldberg, his attorney, reiterated his previous position, and stated that his primary *210 interest was to be removed as the plaintiff in the case; and if consenting to a substitution of plaintiffs would accomplish such result, he was willing to consent that Mr. Alboum or any one else be substituted.
Mr. Alboum filed an affidavit in which he denied what Philip Mistretta had said in his affidavit, and continued by stating:
"3. In fact, Philip Mistretta and the other interested property owners on Weequahic Avenue authorized me to institute this suit, and they were informed by me of every step taken by me in the case."
He further stated that Philip Mistretta was merely a nominal plaintiff and that said Philip Mistretta was acting in behalf of other persons residing in the area, also that this was a class suit and conceding that Mr. Mistretta could withdraw, that he or some other interested person should be permitted to continue the case so that their rights could be safeguarded and legally determined. He stated this had been provided for in the complaint wherein it was alleged in paragraph 8 that:
"8. Plaintiff, for himself and other interested owners, charges that said action of approving said application and appeal is arbitrary, capricious and unreasonable."
Mr. Goldberg called upon Mr. Alboum to produce a copy of a letter which Mr. Alboum had sent to persons whom Mr. Alboum claimed were the "other interested persons." This letter had been sent several days previous and in sufficient time for Mr. Alboum to have received replies; but he stated that he had not received any. The closing paragraph of that letter being as follows:
"Now, I do not know whether you attended the meeting to which Mr. Mistretta referred. All that I do know is that the best thing for a neighbor to do is to be neighborly, which means that we must stick together against the common enemy. The health and well being of our children and the maintenance of the high value of our property is surely worth the few dollars it will cost to fight this case. Therefore, I must ask you to please let me know by letter, as soon as *211 possible, whether you intend to stick to the original agreement to pay your share of this case, or whether you want to quit the battle. I sent Mr. Mistretta a bill showing a balance of $816.00 due me. I was and am still willing to wait for my money until all the owners have paid their enrollment and dues. However, I have taken lickings before and another licking will not freighten me. I do hope, however, that we will not let this case have any effect upon us as neighbors, which is infinitely more important than money. I was depressed by the fact that some of those who have not paid anything have made it their business to act as if they do not see me. This is not at all necessary.
I trust that I have made myself clear and that I will hear from you soon."
Notwithstanding this, the court suggested that Mr. Alboum personally contact the parties who he claimed were interested and obtain affidavits of any of them who claim that they were of the belief that Philip Mistretta had also brought the suit in their behalf or that they were interested in having the case decided upon its merits. Mr. Alboum was given a week in which to do so and at the conclusion did not submit any affidavits excepting one made by him in which he stated:
"6. Mrs. Alboum and I desire to have this action go forward, and I desire to be substituted as plaintiff in the place and stead of Mr. Mistretta."
He also filed a substitution of attorney signed by him as attorney for plaintiff (apparently Philip Mistretta), wherein he stated:
"I, the undersigned, attorney of record for the plaintiff in the above-entitled action, do hereby substitute, McGlynn, Weintraub and Stein, Esqs., of 17 Academy Street, Newark, N.J., as the attorneys for plaintiff in my place and stead.
 October 28, 1954
 ABRAHAM ALBOUM 
 ABRAHAM ALBOUM
 Attorney for Plaintiff."
Since Philip Mistretta had claimed that Abraham Alboum was not his attorney, the authority of Abraham Alboum to *212 substitute some one else as attorney for Philip Mistretta has not only added to the confusion, but if continued, will entirely obscure the real matter which is in dispute.
In requesting Mr. Alboum to submit affidavits of other persons who he claimed were interested, the court was attempting to learn the identity of such persons who may have had the impression that the suit which had been instituted in the name of Philip Mistretta was likewise instituted in their behalf; and that it was intended that he or some one else should act for the others as well as for himself. No affidavits were filed, excepting that several days ago Mr. Alboum filed an affidavit made by one, Katherine Gennis, who stated that she owns property at 102 Weequahic Avenue and that she attended a meeting held in May 1954 in Mr. Mistretta's home and that:
"2. At said meeting a discussion took place about the application of Berkeley Savings & Loan for a parking permit. Some of the people present decided that the application should be opposed and these people chose Mr. Abraham Alboum to represent them; and that, in order to have money to pay Mr. Alboum's fees and expenses for the case, each owner should pay $5.00 down and $2.00 per month, but not exceeding $50.00 each.
3. I personally did not take part in any voting or making of a decision nor did I contribute any money or promise to contribute any money.
4. It is my understanding that to further proceed a cost will have to be levied against signers of a petition opposing the parking permit. If this be the case, then I hereby withdraw my signature from the original petition, as I do not intend to pay or take part in fees or expenses which might be incurred. This was my status before the petition was signed and still remains the same."
It is significant that the affidavit does not recite anything in connection with a suit in this or any other court and that the hearing before the board of adjustment was held on May 20, 1954, and that the hearing before the Board of Commissioners of the City of Newark was held on June 7, 1954.
It would appear that the interest of the objectors was limited to voicing their objection to the members of the board of adjustment and to the city commissioners; and that *213 Abraham Alboum was the real person interested in bringing this suit. However, the issue upon which the suit was primarily brought was to determine whether the action of the city commissioners was arbitrary, capricious and unreasonable. Assuming, without admitting or deciding, whether this is a class suit or whether Abraham Alboum can or should be substituted for Philip Mistretta, or whether in fact Philip Mistretta had or had not retained Abraham Alboum to bring this suit for him, I believe it is in the interest of justice that I decide the real issue involved and leave the other issues to be decided elsewhere in the event it becomes necessary to do so.
The determination whether a variance from a zoning ordinance is to be allowed is a matter for the discretion and experienced judgment of the board of adjustment, controlled by law and reason and supervised under specified conditions by the governing body of the municipality. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); and the court may not substitute its judgment for that of the board of adjustment in granting a variance from a zoning ordinance, unless there has been an abuse of discretion. Brandon v. Board of Com'rs. of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940), and the court may intervene only if the board's action is arbitrary, capricious or unreasonable. Potts v. Board of Adjustment of Borough of Princeton, 133 N.J.L. 230 (Sup. Ct. 1945).
In Ward v. Scott, 16 N.J. 16, 21 (1954) the court, quoting Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 423, 88 A.2d 607 (1952), said:
"The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function."
*214 Citing several recent cases, Justice Jacobs noted that:
"Many other decisions in our State express similar views as to the extent of judicial review in zoning cases."
See also Beirn v. Morris, 14 N.J. 529, 537, 103 A.2d 361 (1954), a late decision closely paraphrasing the Brandon v. Board of Com'rs. of Town of Montclair, quotation above.
Furthermore, it should be observed that a presumption exists to the effect that the action of the board of adjustment is valid, and the burden of proof to rebut this presumption rests upon the one attacking the action taken. E.g., Cobble Close Farm v. Board of Adjustment of Middletown Township, 10 N.J. 442, 453, 92 A.2d 4 (1952); Herman v. Board of Adjustment of Parsippany-Troy Hills Township, 29 N.J. Super. 164, 102 A.2d 73 (App. Div. 1953); Brandt v. Zoning Board of Adjustment of Mount Holly Township, 16 N.J. Super. 113, 117, 84 A.2d 18 (App. Div. 1951).
The statutory grant of power to the Board of Commissioners of the City of Newark and its board of adjustment is found in N.J.S.A. 40:55-39 and the applicable section thereof is as follows:
"d. Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body or board of public works may, by resolution, approve or disapprove such recommendation. If such recommendation shall be approved by the governing body or board of public works then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use.
No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
Both the board of adjustment and the board of commissioners gave considerable thought and study to the matter of street parking and existing traffic conditions and although much testimony was furnished by experts and others called as *215 witnesses by the defendant Berkeley Savings and Loan Association, the members of the board of adjustment personally inspected the area and obtained an independent traffic report from Mr. Edward Cyr, traffic engineer, in which he reported:
"In accordance with your orders I have made a survey of traffic conditions in the area of Lyons Avenue and Bergen Street with reference to the application of the Berkeley Savings and Loan Association for the establishment of a parking station at 81-87 Weequahic Avenue.
The premises 81-87 Weequahic Avenue is located on the north side of Weequahic Avenue, west of Bergen Street, and is immediately to the rear of the association's property located at 88 Lyons Avenue. Entrance to and exit from the proposed parking station would be from Lyons Avenue only. The use of this site as an off-street parking facility is commendable because of the lack of street parking space for the many demands made by the business establishments in this area. The approval of this off-street parking area will greatly reduce the confusion and congestion in the area of Lyons Avenue and Bergen Street, and would result in smoother traffic flow both on Bergen Street and Lyons Avenue. Obviously Weequahic Avenue traffic will not be interfered with since there is no entrance to the station from this street. There is a great demand for parking space in this area, and the approval of this application would materially improve traffic conditions in this area."
The pressing situation in crowded areas makes it imperative that there be an adequate supply of off-street terminal spaces, in order to meet the expanding demand for the parking of automobiles; and parking space maintained near a place of business is sometimes considered as an accessory use thereto. It is apparent that the plan for off-street parking to relieve the congestion of traffic is adequate grounds for granting a variance.
In Steisapir v. Sears, Roebuck & Co., 112 N.E.2d 548, 550 (Ohio Ct. App. 1951), involving a somewhat similar situation, the court said:
"* * * The burdens, as well as the advantages, which affect the economic value of property, because of concentration of traffic in great metropolitan centers, are included in the incidents of ownership of property. Such problems go beyond the immediate neighborhood and affect the whole community. Whether the plaintiff's property is *216 adversely affected is not the question. The interest of the community is the principal consideration. The conclusion of the trial court that the Zoning Board of Appeals was under all circumstances, justified in granting the exception to the use of the three lots as requested by the defendant, is well supported by the record. The Zoning Board of Appeals, in granting defendant's application, was not guilty of an abuse of its discretion. * * *"
In City of Trenton v. Lenzner, 29 N.J. Super. 514 (App. Div. 1954), it was said:
"Accommodations for the parking of motor vehicles on the public streets in or in reasonable proximity to the mercantile sections of urban municipalities have in recent years been exhausted or justifiably restricted or forbidden in order to relieve the vehicular traffic on such streets of congestion. Consequently the subject attained the proportions of a problem of public interest. * * *"
In the recommendation made by the board of adjustment it was stated:
"This appeal coming on to be heard before the Board of Adjustment of the City of Newark, County of Essex, State of New Jersey, on notice and after the Board had inspected the premises and the locality thereof, considered the testimony, of which a stenographic record was made, heard and considered the arguments of counsel, has thereupon on this 3rd day of June, 1954, approved the appeal, it being determined and adjudged that the application of appeal be approved because the proposed use, with due consideration of conditions and surroundings, would not be inimical to the public safety and general welfare if located on said premises, and is reasonably necessary for the convenience of the community; and that relief could be granted without substantial detriment to the public good and that the use would not substantially impair the intent and purpose of the Zone Plan and the Zoning Ordinance.
Recommendation is hereby made to the Board of Commissioners of the City of Newark, that the aforesaid use be allowed according to the application of appeal and plans filed with the Board of Adjustment and with all ordinances of the City of Newark."
In Mr. Alboum's original brief he argues the case from the standpoint that there must be proof of exceptional undue hardship to the applicant and cites in support thereof the cases of Biern v. Morris, 14 N.J. 529 (1954); Preye v. Board of Adjustment of North Bergen Tp., 22 N.J. Super. *217 161 (App. Div. 1952), petition for certification denied by the Supreme Court, 11 N.J. 328 (1953); Ramsbotham v. Board of Public Works of City of Paterson, 2 N.J. 131 (1949).
The foregoing cases were brought under subsection (c) of the statute, N.J.S.A. 40:55-39, and this is not the action of the statute which is applicable in the present situation. Subsection (d) omits the specific requirement of subsection (c) for a showing of undue hardship and provides that in particular cases and for special reasons the board may recommend to the governing body that a variance be granted. The action of the board was subject to approval or disapproval by the governing body. Monmouth Lumber Co. v. Ocean Township, supra.
Prior to the 1948 and 1949 amendments, that section had been construed as requiring such proof, the interpretation growing out of such a requirement in subsection (c) of R.S. 40:55-39.
"Where, however, there are `special reasons' within the contemplation of the act, the board of adjustment may, without regard to the rigid requirements of subsection (c), simply recommend a variance for approval or disapproval by the municipality. The legislature deliberately withheld from subsection (d) the undue hardship requirement which it included in subsection (c), and we are not at liberty to disregard its clear statutory language and meaning." Ward v. Scott, 11 N.J. 117, 122, 93 A.2d 385 (1952).
The court in the Ward case expressly affirmed Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 87 A.2d 9 (1952), in which the Supreme Court first expressed this view.
Nor need there be a showing of uniqueness under subsection (d), this being another of the requirements of subsection (c), which necessitates a "showing of extraordinary condition of the property." Ward v. Scott, supra, 11 N.J., at 122. This position was affirmed in Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 94 A.2d 660 (1953), where the court (at the top of page 369) states that subsection (c) authorizes the local board to grant a *218 variance where, by reason of the exceptional narrowness, shallowness or shape or "by reason of exceptional typographical conditions or other extraordinary and exceptional situation or condition of such piece of property," the strict application of the general regulation would result in "peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of the property." And that subsection (d) authorized the board to recommend to the governing body of the municipality the granting of a variance "in particular cases and for special reasons."
Neither of the Ward v. Scott decisions, 16 N.J. 16 and 11 N.J. 117, both cited supra, nor Monmouth Lumber Co. v. Ocean Township, supra, the three latest (d) cases decided by the Supreme Court, even mention the word "unique," let alone make it a requirement under that subsection.
It would appear that "special reasons" do exist and the board of adjustment could validly recommend the requested variance, for the board, as also required by the statute, found that relief could "be granted without substantial detriment to the public good and that the use would not substantially impair the intent and purpose of the Zone Plan and Zoning Ordinance." This finding, discussed in all the (d) cases, fulfills the prerequisite set up by the last paragraph of N.J.S.A. 40:55-39(d).
There is affirmative evidence which clearly preponderates in favor of the action which was taken. The presumption of validity must be overcome by the plaintiff on whom the burden rests to show that the action of the board was arbitrary, capricious, or unreasonable.
And, of course, the above rules governing the status of the finding of the board of adjustment in relation to the courts and the plaintiff also apply to the governing body of the City of Newark, the board of commissioners, who approved the recommendation of the board. The quotation of Justice Heher in Brandon v. Board of Com'rs. of Town of Montclair, supra, given in the very beginning of this argument, clearly applies to the governing body as well as to the board of adjustment. Or, as more recently stated:
*219 "* * * It is settled that the exercise of this discretionary authority of the local governing body may not be set aside by the courts `unless there has been an abuse of the delegated legal discretion.' Oliva v. City of Garfield, supra, 1 N.J. [184] at page 189; Brandon v. Montclair, supra, 124 N.J.L. [135] at page 145." Monmouth Lumber Co. v. Ocean Township, supra.
Moreover, the board of commissioners did not approve the recommended variance in a private session without argument. Both the Berkeley and the objectors presented their arguments to the commissioners. The latter questioned the attorneys for both sides rather closely and, after an ample discussion filling almost 40 typewritten pages of record, the board approved the variance. Indicative of the commission's consideration of the matter is the fact that it was they who placed the use restriction specifically upon the Berkeley. The association had agreed by these limitations before the board of adjustment.
It not having been shown that the action of the Board of Commissioners of the City of Newark and its board of adjustment was arbitrary, capricious and unreasonable, the writ will be dismissed, but without costs.
Submit order.