EMMA CONLON, HAROLD R. FLITCROFT, ADELAIDE B. HARRIS, ET AL., PLAINTIFFS-RESPONDENTS, v. THE BOARD OF PUBLIC WORKS OF THE CITY OF PATERSON, DEFENDANT-APPELLANT, AND MAYFAIR REALTY CO., A CORPORATION OF NEW JERSEY, INTERVENOR DEFENDANT-APPELLANT.

Argued December 15, 1952—Decided February 2, 1953.

364

*Mr. Joseph Weintraub* argued the cause for appellants (*Mr. James D. Ward,* attorney for The Board of Public Works of the City of Paterson; *Messrs. McGlynn, Weintraub & Slein,* attorneys for Mayfair Realty Co.).

*Mr. Saul M. Mann* argued the cause for respondents.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. We certified of our own motion the appeal of the defendants to the Appellate Division from a judgment entered in the Law Division setting aside an ordinance amending the zoning ordinance of the City of Paterson. The ordinance removes a single lot approximately 120x141 feet at the southeast corner of Broadway and East 33rd Street from the Residence A Zone, "perhaps the finest residential section of the municipality," and constitutes it a Business 3 zone.

Appellants defend the ordinance upon the ground that the restriction of the lot to use for a single-family dwelling is so arbitrary and unreasonable by reason of circumstances peculiar to it and not applicable to other lots of the district as to make the restriction invalid in its application to the lot, and argue therefore that the "municipality may itself recognize that the zoning ordinance is arbitrary and invalid as to the particular parcel of land and may satisfy its statutory and constitutional obligation by amending its zoning ordinance and thereby giving the property the treatment which the statute and Constitution required."

But *R. S.* 40:55–32 requires, that "Such regulations shall be in accordance with a comprehensive plan" designed to promote the specified statutory purposes related generally to the health, safety and welfare of the community. It is true that the mere fact that the ordinance affects only a single lot does not show that it is deficient in this statutory requirement. The validity or invalidity of the ordinance depends upon more than the size of the lot or the fact that the lot is surrounded by uses of another character than those for which the lot is zoned. 8 *McQuillin, Municipal Corporations* (3rd ed. 1950), *p.* 147 *et seq.* However, when the change of zone is not made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives but is designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it, the ordinance is invalid as not being "in accordance with a comprehensive plan" and as granting "in effect, a special exception or variance from the restrictive residential regulation, thereby circumventing the board of adjustment to which is committed by our Zoning Act (*R. S.* 40:55–39, as amended by *L.* 1948, *c.* 305, *sec.* 6, *p.* 1223, and *L.* 1949, *c.* 242, *sec.* 1, *p.* 779) the *quasi*-judicial duty of passing upon such matters, at least initially, in accordance with prescribed standards, * * *." *Speakman v. Mayor and Council of*

*North Plainfield,* 8 *N. J.* 250, 257 (1951) ; *Lynch v. Hillsdale Borough,* 136 *N. J. L.* 129 *(Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 *(E. & A.* 1948) ; *Guaranty Construction Co. v. Town of Bloomfield,* 11 *N. J. Misc.* 613 *(Sup. Ct.* 1933) ; *Campbell v. Hillsdale,* 12 *N. J. Super.* 182 *(App. Div.* 1951) ; *Ridgefield Terrace Realty Co. v. Borough of Ridgefield,* 136 *N. J. L.* 311 *(Sup. Ct.* 1947) ; *DeMott Homes etc., Inc. v. Margate City,* 136 *N. J. L.* 330 *(Sup. Ct.* 1947), affirmed 136 *N. J. L.* 639 *(E. & A.* 1948) ; *Cassinari v. City of Union City,* 1 *N. J. Super.* 219 *(App. Div.* 1949) ; *Vine v. Zabriskie,* 122 *N. J. L.* 4 *(Sup. Ct.* 1939) ; *Kerrigan Development Co. v. City of Newark,* 2 *N. J. Super.* 590 *(Law Div.* 1949) ; *Phillips v. Township Council, etc., Teaneck,* 120 *N. J. L.* 45 *(Sup. Ct.* 1938), affirmed 122 *N. J. L.* 485 *(E. & A.* 1939).

The Law Division was clearly right in setting aside the instant ordinance. There was proof that the lot, vacant for more than 40 years, is not and is unlikely to be attractive as the site for a single family home. The city planning board in 1949 took into account the special conditions of the location which produce this result. The board concluded that another use should be sanctioned but because of the character of the neighborhood that such other use should be limited to a "professional type of building or its equivalent." It was against this background that the owner contracted to sell the lot to the Broadway Bank and Trust Company which desired a location for a branch bank. The plans for the branch bank were submitted to the planning board, which, in purported compliance with its function under *R. S.* 40 :55–35, as amended by *L.* 1948, *c.* 305, *sec. 4, p.* 1222, to approve or disapprove proposed amending ordinances, approved the instant ordinance but carefully stated in its letter of November 9, 1951 that the approval was for the purpose of permitting "The Broadway Bank and Trust Company to build a branch bank with off street parking."

The technical assistant to the planning board testified at the public hearing on the ordinance before the Board of Public Works and disclosed that the branch bank project was

considered by the planning board to be a "neighborhood type" use. However, there are many uses allowable in a Business 3 zone not of the "neighborhood type" which the municipal officials frankly acknowledged would be most undesirable in this neighborhood. Several objectors at the public hearing pointed out the danger that the lot might be put to one of the undesirable uses if for any reason the branch bank was not built. Indeed, the owner's expert witness testified that his opinion of the desirability of rezoning the lot was based upon the location there of the branch bank and said he would change his opinion "according to what structure would be in question" if the proposal related "to any other type of business allowed under a Business 3 Zone." The chairman of the Board of Public Works answered the objectors by saying that the ordinance might be repealed "If for example something should happen and the bank or other structure applied for could not be erected by the applicant."

We fail to see even a debatable basis upon which to support a conslusion that this ordinance is in accordance with a comprehensive plan. It very clearly appears that the ordinance was not passed to permit all of the uses allowable in a Business 3 zone, which necessarily would be in view if the ordinance was purposed to establish or further a comprehensive zoning plan. To the contrary, the record brings us to the inescapable conclusion that the ordinance was adopted only to relieve the lot of the difficulties special to it and to permit the construction of the branch bank as not inharmonious with the residential character of the district. Indeed the implication is very plain that the ordinance would not have been adopted except upon the understanding that the branch bank would be built.

The action of the Board of Public Works in adopting the ordinance thus in fact constitutes an unlawful usurpation of the jurisdiction exclusively reserved by the Zoning Act to the local board of adjustment to grant, or recommend to the governing body the grant of, a variance, *R. S.* 40:55–39, as amended. Subdivision (c) of that section authorizes the

local board to grant a variance from the general regulation for a specific piece of property where, by reason of the exceptional narrowness, shallowness or shape at the time of the enactment of the general regulation or by reason of exceptional topographical conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of the general regulation would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of the property. Subdivision (d) authorizes the local board to recommend to the governing body of the municipality the granting of a variance in particular cases and for special reasons. See *Ward v. Scott*, 11 *N. J.* 117 (1952).

 That the Zoning Act denies to a municipality the power by amending ordinance to grant a variance, see *Bassett, Zoning* (1940), *p.* 161, is emphasized by the 1948 and 1949 amendments to *R. S.* 40:55–39. Those amendments introduced a new criterion governing the action of local boards of adjustment in passing upon applications for variances under both subdivisions (c) and (d). They provide that "No relief may be granted or action taken * * * unless * * * relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." In this way the Legislature made it plain that, though the owner proves his right to a variance by reason of the special situation of his property, the relief must be in terms of authorizing a specific variant use determined by the local board not to be unreasonable in the particular environment.

 In arguing that the ordinance merely recognizes that the general regulation is arbitrary and invalid in its application to the lot, the defendants suggest that the owner could on that ground have successfully maintained a direct action to annul the zoning ordinance as applied to the lot without first asking the local board of adjustment to grant, or to recommend, a variance according to the statute. This might

be so if the challenge were upon grounds which render the general ordinance invalid in its entirety even though the owner sought to have the ordinance declared invalid only as to his property. However, when, as here, the zoning ordinance is not claimed to be invalid in its entirety but only to be arbitrary and unreasonable in its application to the owner's land, and relief in that circumstance may be obtained from a local board of adjustment, the trial court should ordinarily decline to adjudicate an attack upon the ordinance until after the owner has exhausted his remedy to seek relief from the local board of adjustment, *Conaway v. Atlantic City,* 107 *N. J. L.* 404 (*Sup. Ct.* 1931); *Bill-Wel Co. v. Dowling,* 5 *N. J. Misc.* 180 (*Sup. Ct.* 1927); *Lutz v. Kaltenbach,* 101 *N. J. L.* 316 (*Sup. Ct.* 1925); *Rule* 3:81–14; *Bassett, supra p.* 160 *et seq.* When the owner succeeds, by direct attack, in annihilating the zoning ordinance as to his property, the consequences to the general zoning plan may, of course, be more damaging than a change of zone, since the property is then subject to no restrictions whatever. Such a result is plainly undesirable, particularly now that the 1948 and 1949 amendments to *R. S.* 40:55–39 require that the local boards take into account the effect of a proposed variance upon the neighborhood scheme and approve only such as may be allowed without substantial impairment of the zone plan and zoning ordinance. The owner is not prejudiced by the requirement that he first exhaust his remedy before the local board since he may have a judicial determination of his contention that the regulation is arbitrary in its application to his land upon review of the action of the local board if he is aggrieved thereby. *Rule* 3:81–15.

■ One other argument by defendants should be noted. They point out that there are retail stores on a plot 80x100 feet on the northwest corner of the intersection opposite the lot in question and refer to the fact that the planning experts who testified agreed that "uniformity of treatment of both sides of the street is a proper goal in zoning." Apart from the fact that the ordinance was not adopted pursuant

to a plan for extending the business zone, that small plot had stores upon it when it was constituted a Business 1 zone by the original zoning ordinance, adopted in 1921. Those uses might thus have continued as non-conforming uses. The significant fact, however, is that neither the zone nor the uses have been enlarged beyond this small plot. No business other than this has been permitted to invade the Residence A zone. Zoning one side of a street for purposes different from those prevailing on the other side is not *per se* illegal, *Scarborough Apartments, Inc., v. City of Englewood,* 9 *N. J.* 182 (1952); *Appley v. Bernards Township,* 128 *N. J. L.* 195 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 73 (*E. & A.* 1942), and, while doubtless better reasoned planning theories favor the same use zoning on both sides of a street, in this instance there was testimony by plaintiff's expert that if this area was to be opened to additional business proper planning in the circumstances would require "a more extensive change which would probably mean going west on Broadway for at least one block."

Our conclusion that the ordinance is clearly invalid makes it unnecessary to pass upon the validity of the proceedings for its passage and adoption over the veto of the mayor.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—Justice HEHER—1.