55 N.J. Super. 103 (1959)
150 A.2d 44
UNIVERSAL HOLDING CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF NORTH BERGEN AND EUGENE A. AGRESTA, BUILDING INSPECTOR OF THE TOWNSHIP OF NORTH BERGEN, DEFENDANTS-APPELLANTS. SCHWARTZ-SNIDERMAN, INC., A CORPORATION OF NEW JERSEY, THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1959.
Decided March 31, 1959.
*106 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Nicholas S. Schloeder argued the cause for defendants-appellants.
Mr. Joseph Keane argued the cause for plaintiff-respondent (Messrs. Milton, McNulty and Augelli, attorneys).
Mr. Sydney I. Turtz argued the cause for third party defendant-respondent (Messrs. Cohen and Turtz, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This action began as a complaint in the Chancery Division by a property owner to restrain the defendant municipality from taking steps to interfere with the use being made by plaintiff or its tenant of certain premises on 81st Street, North Bergen, as supposedly in violation of the local zoning ordinance, and for a declaration of the legality of the existing commercial use of the property under the ordinance as a proper nonconforming use. The defendant counterclaimed for an injunction against the continuance of the use as illegal. The trial court held the existing use was a valid nonconforming use and that the defendant was estopped to assert the contrary.
The property in question is improved by a large building, built in 1919, which occupies not only the land here concerned but also a larger adjoining parcel in the same proprietorship fronting on Bergenline Avenue, so as to form a rough L, with a parcel in the angle thereof, at the corner of 81st Street and Bergenline Avenue, owned by others.
*107 Bergenline Avenue, a main north-south thoroughfare of North Bergen, is strip-zoned for business use under the local zoning ordinance to a depth of 100 feet on each side. Westerly thereof, the area is all zoned residential. Plaintiff's property as an entirety has a 100-foot frontage on the west side of Bergenline Avenue, between 81st and 82nd Streets, beginning 50 feet from the northwest corner of that avenue and 81st Street. The building extends westward from Bergenline Avenue for 123.9 feet along its entire frontage on that thoroughfare. But at a point 100 feet west of Bergenline Avenue its westernmost 23.9 feet juts south a distance of 50 feet to 81st Street. The land frontage on 81st Street is 24.9 feet. Thus the building is intersected by the boundary line between the 100-foot deep business zone on the west side of Bergenline Avenue and the residential zone lying directly west of the business zone.
When North Bergen's zoning ordinance was adopted in 1934 the entire building was used as a riding academy with a garage-type double door on 81st Street. About 1935 the building became a skating rink, and in 1936 or 1937, a supermarket. A second supermarket operator took over the building in 1938 and operated it as such until 1950. Plaintiff acquired title to the property in 1946. In 1950 the supermarket left and the property was vacant for a short time. In 1951 plaintiff obtained a municipal building permit to make alterations converting that part of the building fronting on Bergenline Avenue into six stores, each having a 16-foot frontage and extending west for 80 feet, and this was done. At the 80-foot depth plaintiff erected a concrete block partition which ran the 100-foot width of the building. Thus, of the remaining building area to the rear, a 20 by 100 foot portion lay in the business zone, and the remainder, 23.9 x 150 feet, in the residential zone, the whole forming a self-contained building unit with frontage only on 81st Street.
This rear building area was rented to Plastic Fashions, Inc. ("Plastic"), a manufacturer of handbags, from 1952 to 1957. The evidence indicates that Plastic's operations *108 comprised packaging, distributing, and, to a moderate extent, manufacturing. Plastic's lease expired in June 1957 and plaintiff then rented the rear area to the present occupant, Schwartz-Sniderman, Inc. ("Schwartz"), a jobber of embroidery products, and a third-party defendant herein. Schwartz engages in no manufacturing on the premises, but does receive, ship, store, package and distribute its products from this building. This is the use presently in controversy.
The old riding academy double door on 81st Street had apparently become dilapidated, so that when Plastic's occupancy began the door was replaced with a modern overhead door. Although the trial court found no evidence that the new door was larger than the old, several neighbors testified it was about two feet higher and a few feet wider. This testimony has some support from the photographs in the appendices, showing new brick above and on both sides of the door.
This litigation apparently had its genesis in complaints by 81st Street residents against the traffic tie-ups caused by the numerous truck deliveries and pickups involved in the Schwartz business  all through the 81st Street entrance. Indisputably there is a great increase in the use made by Schwartz of the 81st Street entrance and the street itself over that of the riding academy, skating rink, and the supermarkets. The Plastic occupancy involved substantial trucking but the evidence indicates it was not as heavy and frequent as that attendant upon the Schwartz operations.

I.
The principal issue mooted before the trial court was whether the portion of the building occupied by Schwartz is being devoted to a nonconforming use within the protection of N.J.S.A. 40:55-48. The trial court held in the affirmative. But we are constrained to disagree. Where forbidden by the zoning ordinance a substantial change from the kind of use in existence when the ordinance was adopted is not permissible. Ranney v. Istituto Pontificio Delle *109 Maestre Filippini, 20 N.J. 189 (1955). The illustrative cases are legion, and many will be found cited in Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956). They clearly require the conclusion that the present operation by Schwartz is not a valid nonconforming use. The original nonconforming use was as a riding academy. The embroidery jobbing business now going on does not remotely resemble it. Neither did any of the other interim uses. There is thus no question but that the westernmost 23.9 feet of the building section occupied by Schwartz, being in a residential zone, constitutes a zoning violation.

II.
A more difficult problem is presented as to the remaining 20-foot portion of the Schwartz tenancy, which is on land within the 100-foot business zone fronting on Bergenline Avenue. The defendant contends this contravenes the ordinance prohibition of "commercial enterprises" in a business zone. Plaintiff counters that this verbiage is so vague as to be legally ineffectual, as commercial uses would in common parlance comprehend all buying and selling of goods or services, and thus include retail business uses, which were obviously intended to be permitted in the "business" zone. The argument is persuasive. See City of Sioux Falls v. Cleveland, 75 S.D. 548, 70 N.W.2d 62, 64-65 (Sup. Ct. 1955); State ex rel. Kansas City Power & Light Co. v. Smith, 342 Mo. 75, 111 S.W.2d 513, 515 (Sup. Ct. 1938); Phillips v. Board of Appeals, 286 Mass. 469, 190 N.E. 601 (Sup. Jud. Ct. 1934); Jones v. Robertson, 79 Cal. App.2d 813, 180 P.2d 929 (Ct. App. 1947); Kinney v. Sutton, 230 N.C. 404, 53 S.E.2d 306 (Sup. Ct. 1949).
The defendant amended the ordinance in December 1956 so as to define "commercial enterprises" as "those engaged in the wholesale merchandising of goods." It is not disputed that "jobbing" is comprehended within the phrase "wholesale merchandising of goods." If, however, the prohibition of commercial uses in the business zone was too *110 vague to be enforcible against wholesaling before the clarifying amendment, the prior use of the property in question for jobbing or wholesaling must be considered to have constituted a nonconforming use of the portion of the premises so used after the adoption of the amendment, and entitled to be continued thereafter, provided no illegal use of the property was going on at the same time. As indicated above, Plastic was in the premises as of December 1956 and doing mainly a jobbing business there, but some degree of manufacturing was also unquestionably going on at the same time. As the manufacturing phase of the operation is indubitably in clear violation of the ordinance, a nonconforming status was precluded in respect even of the jobbing aspect of the use. One who is in violation of a zoning ordinance when his use begins may not predicate a protected nonconforming status on such use. Levy v. Ackerman, 133 N.J.L. 69 (Sup. Ct. 1945); and see Frank J. Durkin Lumber Co. v. Fitzsimmons, 106 N.J.L. 183, 190 (E. & A. 1929); cf. Scavone v. Mayor and Council of Borough of Totowa, 49 N.J. Super. 423 (App. Div. 1958). In view of these considerations, the amendment of December 1956, which operated to preclude subsequent use of the business zone segment of the Schwartz-occupied quarters for wholesaling, is effective to invalidate the present use of that property for such purposes by the Schwartz concern.
All of the foregoing results in the conclusion that the present use by Schwartz is violative of the ordinance as it now stands. The jobbing business it conducts is not permissible in either the residential or the business zones in which its leased premises are situated.

III.
Plaintiff contends that section X of the ordinance authorizes the use now going on. It reads as follows:

"Section X  Abutting Districts
Par. 1. All buildings hereafter erected, altered or constructed in a business, commercial and light industrial or heavy industrial district *111 where the lot or plot on which said building is to be erected, altered or constructed abuts a residential district, may extend to the full depth of the lot or plot; Provided, However, that no entrance or exit shall be constructed on the premises facing the residential district."
This section does not help plaintiff's cause. In the first place, the Schwartz entrance faces, and, indeed, is actually in the residential district. But, more basically, this provision contemplates that the lot or plot in question be situated in its entirety in a non-residential zone. Its purpose is apparently merely to relieve of setback or side or rear yard lot requirements otherwise applicable. Nothing in the language suggests an intention to allow the construction or alteration of a building to be used for business or commercial purposes on the entirety of a plot of land intersected by the boundary line between residential and business districts.

IV.
It is also argued that the municipality is barred by estoppel and laches from any interference with the business or commercial use of the premises. Plaintiff points to the long acquiescence by the municipality in the non-residential uses of the westerly portion of the leased premises, the issuance of a permit for the 1950-1951 alterations, and the more recent jobbing and manufacturing operations in the easterly part of the leased premises.
The application of laches as a defense to a municipality's attempt to enforce its zoning ordinance does not, generally speaking, comport with salutary public policy, cf. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 307 (1953), and the doctrine should not be permitted to frustrate the enforcement of a valid zoning regulation except in the clearest and most compelling circumstances. After all, the governing authorities represent all the people of the municipality and the zoning ordinance is presumably for the benefit of the community as a whole. Previous violation of this ordinance apparently did not develop the degree of public *112 inconvenience now being visited upon the residents of 81st Street near these premises through the greatly increased frequency and extent of use of the street by large trucks serving the Schwartz business. The plaintiff was on notice of the terms and conditions of the ordinance when it acquired the property in 1946. If it inquired, it presumably knew that the building had never previously been used for manufacturing, wholesaling or jobbing of any kind. Moreover, the interior alterations made in 1950-1951 were primarily to facilitate the legitimate use of the Bergenline Avenue part of the building for retail business purposes. Laches is no defense to the counterclaim here.
Nor does the claim of estoppel enjoy any stronger status. Prior tolerance of a use in violation of a zoning ordinance, even where a permit has issued and expenditures have followed, will not estop the municipality from later enforcing the ordinance. Adler v. Department of Parks and Public Property, Irvington Tp., 20 N.J. Super. 240, 243 (App. Div. 1952); Rockleigh Borough, Bergen County v. Astral Industries, Inc., 29 N.J. Super. 154 (App. Div. 1953). Cf. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 93, 94 (L. Div. 1956), affirmed 24 N.J. 326 (1957). The cases relied upon by plaintiff, Johnson v. Hospital Service Plan of New Jersey, 25 N.J. 134 (1957), and Vogt v. Borough of Belmar, 14 N.J. 195 (1954), are not in point. Neither sanctions the patent violation of a zoning ordinance.

V.
The one fairly debatable contention advanced by the plaintiff is that the strict enforcement of the ordinance with the effect discussed above would constitute an arbitrary and unreasonable restriction on the exercise of its right of property in the premises. The argument is pressed that to prohibit a suitably functional use of the westerly portion of the building, which was erected long before the zoning ordinance was adopted, and is completely unusable for residential purposes, would be tantamount to a taking of property *113 without compensation and without due process of law. See Baronoff v. Zoning Board of Adjustment of Lower Makefield Tp., 385 Pa. 110, 122 A.2d 65 (Sup. Ct. 1956); Arditi Realty Co., Inc. v. Murdock, 67 N.Y.S.2d 809 (Sup. Ct. 1946); cf. Annotation 159 A.L.R. 854 (1945).
It is evident that the plaintiff is not attacking the general validity of the ordinance in providing for 100-foot strip business zoning on Bergenline Avenue with direct abutment of a residential zone, but only the unreasonable effect and application of such zoning on the particular property it owns, in the circumstances of its peculiar constructional improvement. In such a situation, however, the rule is that the property owner should ordinarily first exhaust his remedy for relief by way of application for recommendation of variance from the local board of adjustment under N.J.S.A. 40:55-39(d). Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 370 (1953); and see Kozesnik v. Montgomery Tp., 24 N.J. 154, 183 (1957); Finn v. Wayne Tp., 53 N.J. Super. 405, 411, 412 (App. Div. 1959). This, we think, is the course which plaintiff should have pursued here. We express no opinion on the merits of such an application since the decision should in the first instance be rendered by the local agency. The fact that the proposed variance use is not within the scope of the nonconforming use existing when the ordinance was adopted will not preclude a grant of relief by the board of adjustment if otherwise warranted on the facts. Grundlehner v. Dangler, 29 N.J. 256 (1959).
The judgment of the Chancery Division is reversed. The cause is remanded with directions to grant the defendant the relief it sought on the counterclaim. The trial court should, however, stay the enforcement of any such judgment for a period reasonably sufficient to enable the plaintiff to apply for such relief as it may be advised is appropriate before the board of adjustment, and until the final determination of such proceedings.