77 N.J. Super. 542 (1962)
187 A.2d 193
ELIZABETH ASCIONE, ORESTE CASAGRANDE AND PAT CAPORINO, PLAINTIFFS-RESPONDENTS,
v.
CITY OF UNION CITY AND THE BOARD OF ADJUSTMENT THEREOF, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1962.
Decided December 14, 1962.
*544 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Archie Usdin argued the cause for appellants (Mr. Cyril J. McCauley, attorney; Mr. Usdin, of counsel).
Mr. Nicholas S. Schloeder argued the cause for respondents.
The opinion of the court was delivered by LEWIS, J.A.D.
This is a zoning case attacking the validity of a municipal ordinance to the extent of its application to plaintiffs' property. The defendants City of Union City (hereafter city) and the Board of Adjustment thereof (hereafter board) appeal from the final judgment of the Superior Court, Law Division, Hudson County, rendered in favor of plaintiffs.
In 1930 the city adopted a zoning ordinance under which the territorial limits of the municipality were zoned into numerous use districts designated respectively as residential, business and industrial. Their respective boundaries were established according to and as shown by a building zone map of the city. The map was incorporated by reference and made a part of the zoning ordinance.
The subject property is a one-story brick building (approximately 31 x 80.06 feet) located at No. 1700 Manhattan Avenue, and identified as Lot 4, Block 179 on the Union City Tax Map. It is situated within a district that was zoned residential. On the effective date of the ordinance said property was used as a public garage for parking and storage of motor vehicles. In 1935-36 the premises were rented to an electrical contractor. From 1946 to 1959 they were occupied by the General Collision Company, engaged in automobile *545 body and fender work  substantially the same use as that intended by plaintiffs. Between January 1960 and December 1960 the property was utilized as a machine shop, after which time it remained vacant. In March 1961 plaintiff Elizabeth Ascione, the then owner, entered into a contract for its sale to plaintiffs Oreste Casagrande and Pat Caporino. Pending settlement the purchasers, with the consent of the seller, applied for and were denied a certificate of occupancy for the operation of an automobile repair and paint shop business at the location in question.
Plaintiffs thereupon appealed to the local board for a variance averring that
"the premises at the present time is a machine shop which has occupied same for a number of years, they having theretofore been occupied as an automobile repair and body and fender shop for many years. Applicants propose to use said premises as an automobile repair and body and fender shop, as heretofore,"
and petitioned for a recommendation that a variance be granted "pursuant to R.S. 40:55-39(d) with respect to said Lot 4 in Block 179." After a hearing the board, by its order dated May 8, 1961, denied plaintiffs' application; its findings of fact and conclusion were set forth in a single paragraph of the order which reads:
"And it further appearing that due notice has been given to all property owners within 200 feet of the subject premises, and proof of service of said notice having been filed with the Board, and the testimony of witnesses for the Petitioners and objectors having been heard and considered, and the Board having made an `on site' inspection of the premises in question, and the surrounding neighborhood, and the Board being of unanimous opinion that the variance from the terms of the Zoning Ordinance of the City of Union City should not be made for the reason that no hardship was shown warranting a variance from a residential use zone to permit an industrial use of said premises and such variance would be contrary to the public interest and in violation of the spirit of such ordinance." (Emphasis supplied. Note, proof of hardship is not a sine qua non under N.J.S.A. 49:55-39(d). Rain or Shine Box Lunch Co. v. Newark Bd. of Adjustment, 53 N.J. Super. 252, 262 (App. Div. 1958); Ward v. Scott, 11 N.J. 117, 121-122 (1952).)
*546 Then followed plaintiffs' action in lieu of prerogative writ initiated in the Superior Court, Law Division. The complaint, inter alia, alleged that plaintiffs had exhausted their administrative remedies and demanded "That such portion of said ordinance, insofar as it affects the property of the plaintiff [sic], be set aside," and that the officers of the city be required to issue the requested certificate of occupancy. The substance of plaintiffs' arguments before the trial court was, as it is here on appeal, that the refusal of the board to issue the requested variance was tantamount to the taking of property without due process of law; the local zoning ordinance was unreasonable, discriminatory, arbitrary and vexatious; and they have been unlawfully deprived of their constitutional rights contrary to Article I, paragraph 1 of the 1947 Constitution of New Jersey and the Fourteenth Amendment of the United States Constitution.
The trial, which commenced November 13, 1961, consumed two and a half days. The undisputed facts were stipulated, 15 exhibits were admitted in evidence, testimony was elicited from eight witnesses, counsel submitted briefs, and the respective legal contentions were argued. Defendants' motions for judgment of dismissal were denied and, on December 1, 1961, a final judgment for plaintiffs was entered (a) vacating the action of the Board of Adjustment on May 8, 1961, (b) setting aside the zoning ordinance adopted February 11, 1930 "insofar as the same pertains to Lot 4 in Block 179, as shown on Union City Tax Map," and (c) directing the proper city officials to issue a certificate of occupancy to the plaintiffs-purchasers on condition that they "construct a booth to do the painting and a blower and stack to remove and diffuse all fumes." It is from this judgment that defendants appeal, asserting several grounds in support thereof. Those essential for review and the resolution of the basic issues here involved are (a) the trial court erred in holding that the zoning ordinance was arbitrary, capricious and unreasonable as it applies to plaintiffs' property, (b) its judgment was based on matters *547 aliunde the record, and (c) evidence was improperly admitted.
Plaintiffs did not challenge the zoning ordinance in its entirety. Their pro tanto attack was directed to the ab initio invalidity of the ordinance as it related to the subject property and, in that respect, they maintained that the ordinance was ultra vires and void. It was not only appropriate but essential under the circumstances that plaintiffs first apply for a variance before the local agency of the municipality and thereby exhaust their available administrative remedy. Universal Holding Co. v. North Bergen Twp., 55 N.J. Super. 103, 113 (App. Div. 1959); Conlon v. Bd. of Public Works, Paterson, 11 N.J. 363, 370 (1953); Kozesnik v. Montgomery Twp., 24 N.J. 154, 183 (1957). Plaintiffs were obliged to proffer original proofs to establish their contentions with respect to the issues in such litigation. Id., at p. 187.
It is uncontroverted that the operation of the property in dispute constituted a nonconforming use at the time the ordinance was adopted, it has continued as an industrial use with various types of commercial enterprises (including 13 years as a body and fender business), and the property at no time has been utilized for residential purposes. Plaintiffs do not claim that their intended occupational activity can be supported as a valid nonconforming use. The fact, however, "that the proposed variance use is not within the scope of the nonconforming use existing when the ordinance was adopted will not preclude a grant of relief by the board of adjustment if otherwise warranted on the facts." Universal Holding Co. v. North Bergen Twp., supra, 55 N.J. Super., at p. 113; Grundlehner v. Dangler, 29 N.J. 256 (1959).
The trial judge personally inspected the subject property and the surrounding neighborhood, without objection and in the presence of counsel for each of the parties litigant. In rendering his decision, after commenting upon the testimony and the facts which were presented, the following observation was made:
*548 "In the immediate area of plaintiffs' property, that is, Manhattan Avenue between 16th and 18th Streets, the one factor that impresses me most is the predominance of industrial and business uses and nonconforming uses. This becomes more apparent upon inspection."
As the presiding judge he had the right to view the local scene "in order to better understand the evidence in the case," but "he may not go outside of the record and base his ruling on his personal knowledge or facts ascertained from a personal inspection." See opinion of this court in Peoples Trust Co., etc. v. Hasbrouck Heights, etc., 60 N.J. Super. 569, 576 (App. Div. 1959), and the authorities therein cited.
We turn now to the proofs in the record, the analysis of which accentuates three predominant elements, (1) the character of the neighborhood, (2) the defects in the formulation of the zoning ordinance, and (3) the absence of a comprehensive zoning plan.

(1)
Plaintiffs' brick building (Lot 4, Block 179) is situate on the east side of Manhattan Avenue between Mountain Road (a continuation of 16th Street) and 18th Street. Immediately adjacent to it is a large industrial factory known as the Cranwell Building (Lots 26, 27, 28 and 29, Block 179) consisting of three contiguous six-story buildings fronting on Manhattan Avenue, and extending for approximately 212.5 feet to the northeast corner of that avenue and Mountain Road. Adjoining plaintiffs' property toward 18th Street, and fronting Manhattan Avenue for a distance of 105 feet to the southeast corner of 18th Street, is the property of H. Betti & Sons, Inc. (hereafter Betti), known as No. 1702-08 Manhattan Avenue (Lots 1, 2 and 3, Block 179). The improvements on the Betti property include (a) one-story factory buildings at the 18th Street corner, used as a repair shop and warehouse incident to a pool table business and for the finishing and repairing of various types of small machines, and (2) a "battery" of frame garages, situate between said factory *549 buildings and plaintiffs' property. This east side of Manhattan Avenue is devoted 100% to industrial and commercial usage.
The physical conditions of the general vicinity were graphically described by the local board itself, within a year previous to its hearing on plaintiffs' appeal, when a variance was granted to the neighboring Betti corporation. In those proceedings the relief afforded the corporate applicant related to Lots 1, 2 and 3 in Block 179, and it was permitted to continue the business use of Lot 1 (corner lot) "as a variance rather than a prior non-conforming use" and it was granted the right to construct on Lots 2 and 3 "a one story extension of the premises on said Lot 1 and to permit the use of said extension for commercial use; namely, the shipping, receiving, assembling, displaying and selling of petitioner's products therein."
In the case at bar the trial court admitted in evidence the form of resolution and recommendation of the Board of Adjustment (dated July 21, 1960) adopted in the Betti proceedings. The salient facts upon which the board in that matter reached its determination should be here noted, bearing in mind that the property in the case sub judice is sandwiched between the Betti premises and the six-story Cranwell factory buildings. In the Betti decision the board made the following characterization of the area:
"The neighborhood is a mixture of industrial and commercial uses with some residences, mostly rather old. Immediately south of petitioner's premises on Manhatten [sic] Avenue is a machine shop of Best Aircraft Corporation. To the south of that on Manhatten [sic] Avenue and running south to 16th Street is a large six story factory building, one of the largest factories in Union City. Across the street from petitioner's premises and on the west side of Manhatten [sic] Avenue from 16th Street north to 18th Street (17th Street does not come through) there is a large gasoline station, a factory building, three residences, a tavern with an apartment above it. On the northwest corner of Manhatten [sic] Avenue and 18th Street, diagonally opposite petitioner's premises, there is another machine shop. Immediately east of petitioner's property and on the south side of 18th Street east of Manhatten [sic] Avenue there are a mixed *550 group of residences, embroidery shops, a vacant lot and seven dilapidated automobile garages. There has been no new construction in the immediate area for quite a few years. * * *
The present use of the northernmost part of petitioner's premises as a prior non-conforming use together with the proposed extension constitutes the highest and best use for them in view of the development of the neighborhood. It would be almost impossible to use the premises for residential purposes considering the machine shop [Lot 4, Block 197, the subject property in these proceedings] immediately south of them and the large, imposing and ugly six story factory which literally frowns down upon the petitioner's property. * * *
The proposed use of Lots 1, 2 and 3 in Block 179 will not substantially impair the intent or purpose of the Zone Plan or the Zoning Ordinance of the City of Union City, but on the contrary, will provide a modern building aesthetically enhancing the neighborhood."
The recommendation in those proceedings was based upon the following special reasons which were found to exist and were specifically recited in the board's resolution:
"a) That the neighborhood surrounding the premises in question is devoted to business, commercial, industrial enterprise and residences of all kinds and description.
b) That the aforesaid facts established by the evidence corroborate the conclusion of this Board upon personal inspection of the site which reveals that the location of the premises, its appearance and the atmosphere created by he [sic] surrounding use made of the land, fit the pattern of the area for use of the premises in question as a one story building for commercial use.
c) That, in granting the application, the value of the properties in the residential area will not be detrimentally affected; that the erection of a one story building on the premises in question for commercial use is advisable as the best use of the premises in the interest of the City of Union City and in keeping with the intent and spirit of the Zoning Ordinance.
d) It is found as a matter of fact that the relief sought is in the public interest and can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the Zoning Plan and Zoning Ordinance."
The Betti procedure and consequent variance are not a precedent or legal basis that per se entitles plaintiffs to the relief sought. Estoppel may not be asserted against a municipality, otherwise ill-advised or illegal variances would furnish justification for the repetition of a wrong. See *551 Potts v. Board of Adjustment of Princeton, 133 N.J.L. 230, 237 (Sup. Ct. 1945), cited in Greenway Homes v. River Edge, 137 N.J.L. 453, 458 (Sup. Ct. 1948). The findings, however, in the Betti case furnish an evidential indicator of the character of the neighborhood and the discriminatory treatment by the local board with respect to comparable and adjoining properties within a limited area of the same zoning district. They also lend support to the arguments directed toward the alleged unreasonableness of the applicable zoning ordinance as it affects plaintiffs' property. Furthermore, the character of the neighborhood, as aforedescribed, was substantiated in detail by the testimony of Michael S. Lewis, a resident realtor. Although he was not qualified as an expert in the technical field of zoning, his testimony, admitted over objection, that the east side of Manhattan Avenue between 16th and 18th Streets "should be zoned industrial" was not under the circumstances harmful error.
The documentary and testimonial evidence impels support of plaintiffs' contention that Block 179, consisting of 29 lots (bounded by Manhattan Avenue, Mountain Road, Cliff Street and 18th Street), is predominately an industrial and business locality. It was also testified, without contradiction, that the "neighborhood has been stagnant for a great many years. * * * there has been nothing new in that neighborhood for the last 30 or 40 years." Furthermore, the several photographic exhibits of the area evidence a general appearance of timeworn buildings typical of those to be found in an industrial or business subdivision of a city.
This entire area (Block 179), however, is zoned residential except for a triangular segment at the corner of Manhattan Avenue and Mountain Road, zoned industrial, on which is located a major portion of the aforesaid Cranwell factory buildings.

(2)
Joseph M. Henehan was produced as a witness on behalf of the city and board. He testified that he had been a realtor *552 in Union City for the past 40 years, and that he had been secretary of the Union City Board of Adjustment since its inception in 1930. On direct examination the following frank and illuminating testimony unfolded:
"Q. Again referring back to February 11, 1930, was 1700 Manhattan Avenue [plaintiffs' property] already in existence at that time [when the zoning ordinance was adopted]?
A. I am sure it was. It's a one-story brick building.
Q. Now, was that placed in the residential zone?
A. It was just placed and left there. When the zoning was made up, it was missed because it was a garage at that time.
Q. Well, the dividing line was at the end of the Cranwell Building. Is that correct?
A. That's right.
THE COURT: What do you mean when you say it was missed?
THE WITNESS: When zoning was set up, your Honor, it was set up by five men. They were not salaried men and it was sort of a slip and miss situation where it got the important things in the City and not everything. They didn't get any salary whatsoever. It was just an honorary job and I was one of the original men on it. We did the best we could under the conditions. We part-timed.
THE COURT: Were you one of the planning commissioners who fixed these zones?
THE WITNESS: No. I was on the original Zoning Board, your Honor.
THE COURT: Well, the one that was adopted to the ordinance in 1930, were you one of the men that worked that out?
THE WITNESS: I was on the Board, your Honor. We went along with the engineer.
THE COURT: Who did the zoning, the City Engineer or the members of the Board?
THE WITNESS: The surveying was all done by the Engineering Department. The Board sat down nights and worked it out.
THE COURT: Were you a member of that Board?
THE WITNESS: I was, your Honor.
THE COURT: You say you did the best you could. Is that it?
THE WITNESS: Yes, your Honor. We spent nights at it, not days.
THE COURT: Who were the other members of it?
THE WITNESS: Eddie McDermott, a real estate man. There was a cleaning man on Bergenline Avenue. Eddie McDermot was a real estate man. There was the City Engineer and myself and another man who was in the jewelry business. There was five men on the Board at that time appointed by the Mayor."
The explanations of this witness were not challenged in any way.

*553 (3)
A building zone map, dated 1942, was received in evidence. According to the zoning ordinance the boundaries of the respective districts were established "as shown on the Building Zone Map of Union City, N.J., which accompanies and is hereby declared to be a part of this Ordinance." That proffered exhibit contains a statement indicating that it had been amended on nine occasions since 1942 and reflected the several zoning districts as "residence" (blank spaces), "business" (shaded areas), "industrial" (white dotted). The legend also refers to V's to indicate regions where variances had been granted. This map portrays a classic illustration of patch-quilt or checkerboard zoning. Scattered throughout the entire municipality are numerous small industrial districts (52 by count), with a comparable number of separate and interspersed business and residential districts. Added to this, the map reveals 21 sections (excluding the recently granted Betti variance) altered by changes through the medium of issuing variances. Even a cursory examination of this exhibit conveys an immediate and vivid impression of what might be expected in an unplanned, unzoned municipality. There was also admitted in evidence a sketch (lot laid-out plan) showing property within a 200-foot radius of the subject premises. It is mathematically obvious, upon scrutinizing the building zone map together with this sketch exhibit, that a substantial portion of the Cranwell factory, which was spot-zoned industrial, actually extended into the adjoining district zoned residential.
In 1949 this court had before it for construction an amendment to the 1930 ordinance of the City of Union City which is now under review. By that change in the ordinance there was an attempt to reclassify one lot from residential to business purposes. In support of the municipal action, the city asserted that its original zoning of the area then in question "was erroneously done." Judge (now Justice) Jacobs, in writing the opinion for the court, held that the amendment was unreasonably discriminatory and it was accordingly nullified *554 with the lucid comment: "There is no explanation offered as to why, if these views were entertained, it did not rezone the whole area but merely sought to transfer the single lot to a business zone while retaining all of the surrounding property in a residence zone." Reference is made to Cassinari v. City of Union City, 1 N.J. Super. 219, 221 (App. Div. 1949). The evidence in the record of that case gives credence to the verity of the testimony elicited in the present litigation from the zoning officer Henehan quoted supra, indicating the casual, indefinite and not sufficiently studied consideration that was given to some sections of the city by the personnel responsible for drafting the zoning ordinance. The words of the witness "it was sort of a slip and miss situation where it got the important things in the City and not everything" are appropriately descriptive. When delegated powers so lightly treat property rights, the "judicial nerve tingles." See Jaffe, "An Essay on Delegation of Legislative Power," 47 Colum. L. Rev. 561, 586 (1947).
It is not necessary to review the history of constitutional zoning and our statutory implementations, as this has been done in numerous reported decisions, e.g., the opinions of Justice Heher in Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952), and Rockhill v. Chesterfield Twp., 23 N.J. 117 (1957). The objective of our zoning laws is to seek a well-balanced community and to prevent unreasonable, arbitrary or capricious exercise of the local legislative power resulting in haphazard or piecemeal zoning. See Kozesnik v. Montgomery Twp., supra, 24 N.J., at pp. 166, 169. Our Legislature, in declaring the purposes and essential considerations in exercising such a municipal function, specifically provided that zoning regulations shall be in accordance with a "comprehensive plan" designed to further stated public benefits and then mandated that "[s]uch regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving *555 the value of property and encouraging the most appropriate use of land throughout such municipality." R.S. 40:55-32.
Professor Charles M. Haar has equated "comprehensiveness" with a carefully thought out and planned ordinance, adequately taking into consideration the constitutional requirement as to due process and equal protection of the law, stating:
"Running through the various decisions emphasizing forethought as the essence of comprehensiveness is the realization that only an ordinance drawn with forethought can be a reasonable ordinance, and only a reasonable ordinance can hurdle the constitutional barriers of due process and equal protection." Haar, "In Accordance With a Comprehensive Plan," 68 Harv. L. Rev. 1154, 1171 (1955).
The professor also observed (at page 1170) that "No zoning should be done without such a comprehensive study," citing Advisory Committee on Zoning, U.S. Dep't of Commerce, A Standard State Zoning Enabling Act 6 n. 22 (Rev. ed. 1926). Note generally, 1 Rathkopf, The Law of Zoning and Planning, c. 9, Necessity of Comprehensive Plan (1960). The policy is fundamental that property in like circumstances should be treated alike. "There cannot be invidious distinctions." Rockhill v. Chesterfield Twp., supra, 23 N.J., at p. 126. Arbitrary discrimination has been consistently struck down by our courts. See Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250, 258 (1951), and the authorities therein collected. Later decisions to the same effect include Cresskill v. Dumont, 15 N.J. 238, 250 (1954), and Roselle v. Wright, 21 N.J. 400 (1956).
It was recently emphasized in Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232, 242 (1962), that the role of the judiciary in reviewing zoning ordinances is "narrow," and the court cannot "pass upon the wisdom or unwisdom of an ordinance, but may act only if the presumption in favor of the validity of the ordinance is overcome by an affirmative showing that it is unreasonable or arbitrary." Our inquiry therefore is limited to determining whether defendants' action with respect to plaintiffs' property "has been so arbitrary *556 and bears so insubstantial a relation to the objectives legitimately to be pursued under comprehensive zoning laws, that it offends against the state or federal Constitution." 2 Metzenbaum, Law of Zoning (2d ed. 1955), p. 1361, quoting from State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph, 139 Ohio St. 229, 39 N.E.2d 515, 138 A.L.R. 1274 (Sup. Ct. 1942).
Injustice and vice emanate from haphazard zoning. Discrimination, spot-zoning and re-zoning by variances are the negation of planned zoning and impinge upon property rights protected by constitutional guarantees. We are convinced from a study of the record before us that the presumption of validity which attaches to a municipal ordinance was overcome by a preponderance of the evidence. To the extent that it applies to plaintiffs' property, the zoning ordinance of the city is discriminatory, arbitrary and unreasonable; the proofs clearly demonstrate its unconstitutionality.
Judgment of the trial court is affirmed.