192 N.J. Super. 15 (1983)
468 A.2d 1072
PRIMO IANIERI, AND JANICE IANIERI, HIS WIFE, CLARK W. CONVERY, AND JEAN CONVERY, HIS WIFE, PLAINTIFFS,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF EAST BRUNSWICK, AND BARRY M. RAUFF, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided August 4, 1983.
*18 James B. Convery for plaintiffs (Convery & Convery, attorneys).
Samuel H. Davis, for defendant Zoning Board of Adjustment of the Township of East Brunswick.
Robert P. Weinberg, for defendant Barry M. Rauff.
SKILLMAN, J.S.C.
This prerogative writ action challenges a resolution of the Zoning Board of Adjustment of East Brunswick declaring that the predecessor in title of defendant Barry M. Rauff had established a valid nonconforming use of the subject premises for the sale of antiques. The challenged resolution also finds that an exterior sign used by Rauff to advertise his antiques business is the same size and dimension as a sign used by his predecessor and hence may continue to be used.
The facts relevant to the establishment of the purported nonconforming use are set forth in the zoning board's resolution and are not subject to serious challenge. The subject property was conveyed in 1955 to Rauff's predecessor in title, Marion Thomas, who used it as her home until her death in 1980. During this time Thomas also used the property for the sale of antiques. This use was not a permitted use under the zoning ordinance then in effect and Thomas never applied for a variance. *19 A little more than a year after Thomas' death, the property was conveyed to Rauff. He proposed to continue using the property for the sale of antiques. In order to conduct that business, Rauff applied to the project planner for East Brunswick for a sign permit for a business known as "Antique Interior by Barry." The application was granted, which precipitated an "appeal" to the board by a property owner residing near the Rauff property.
The zoning board concluded that the sale of antiques was not a permitted use in the zone and that the use was therefore nonconforming. It also concluded that the use had not been permitted by any ordinance which had been in effect since Thomas acquired the property in 1955.[1] Nevertheless, the board concluded that the use of the property became a valid nonconforming use in 1958 when the township adopted a new zoning ordinance. It construed one section of that ordinance as a blanket validation of every use of property then being made in the municipality, regardless of whether the use was then or ever had been a permitted use.
The court must determine whether the board's construction of the 1958 zoning ordinance is correct and whether a blanket validation of all existing uses of property is compatible with state land use legislation.

I
The section of the 1958 zoning ordinance construed by the board as a blanket validation of all existing uses of property in paragraph C(4) of section XIX, which states:

*20 Upon written request from an owner or tenant, the building inspector shall issue a certificate of occupancy for any building or use of land existing at the time of enactment of this ordinance certifying, after inspection, the extent and kind of use made of the building and whether such use conforms to the provisions of this ordinance. Such a certificate shall be issued without charge within six months of the enactment of this ordinance for any nonconforming use or building.
This section does not on its face purport to validate uses of property which were illegal when the zoning ordinance was adopted. To the contrary, the primary objective seems to be the establishment of a mechanism by which property owners may verify that existing uses of property conform with the zoning ordinance. It does provide that a certificate of occupancy may be issued for a "nonconforming use." However, this term has a well established meaning in the law of zoning; that is, a use which was permitted when commenced but is prohibited by a subsequently adopted zoning ordinance. Belleville v. Parillo's, Inc. 83 N.J. 309, 315 (1980); Universal Holding Co. v. North Bergen Tp., 55 N.J. Super. 103, 110 (App.Div. 1959). Therefore, if the governing body of East Brunswick had intended a more expansive scope for the term "nonconforming use," it reasonably may be expected it would have said so in clear and unequivocal language. However, the ordinance contains no definition of the term nor any indication that anything other than its usual meaning was intended.
It is also noteworthy that the thrust of the section authorizing nonconforming uses is, as in most zoning ordinances, to restrict them to the maximum extent possible. Thus, section XVIII not only prohibits any enlargement of a nonconforming use but also provides that the right to continuation will be lost if the building in which it is conducted is "enlarged, extended, reconstructed, structurally altered or removed." Furthermore, section II states that the 1958 ordinance should be construed not to repeal or in any way impair existing zoning ordinances except to the extent it imposes more restrictive conditions upon land use. However, if the board's interpretation of section XIX were correct, the 1958 ordinance would have the practical effect of *21 validating a use which had been illegal previously. In sum, the board's reading of the 1958 ordinance is inconsistent not only with the well established meaning of the term "nonconforming use" but also with the overall design of the zoning ordinance.
The board seeks to bolster its position by asserting the existence of a long-standing administrative practice of reading the 1958 ordinance to validate any use of property in existence on the date of its adoption, regardless of its legality. The evidence of such an administrative practice is sparse. The occurrence of situations to which the purported administrative practice might apply appears to have been sporadic, and it is unclear whether the practice had come to the attention of the governing body of East Brunswick. Therefore, it cannot be said that the legislative body with responsibility for enactment of municipal zoning ordinances has acquiesced in the alleged administrative practice.
In any event, even if such an administrative practice had been established, that practice could not be invoked to place a meaning upon the zoning ordinance which its language will not support. Administrative construction may be freely referred to in resolving ambiguities in legislative enactments, but it may not be used to override an unambiguous expression of legislative intent. Service Armament Co. v. Hyland, 70 N.J. 550 (1976); Safeway Trails, Inc. v. Furman, 41 N.J. 467, 483 (1964). Accordingly, the purported administrative practice of treating any use in effect when the 1958 zoning ordinance was adopted as a valid nonconforming use cannot be relied upon to establish a wholly novel meaning for the term "nonconforming use" in the context of the East Brunswick zoning ordinance.

II
Furthermore, even if the board's reading of the East Brunswick ordinance were supportable or if an ordinance were now adopted explicitly validating all existing uses of land, *22 regardless of their legality, such an ordinance would be invalid.[2] A municipality must exercise its zoning power in conformity with state enabling legislation. Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20-21 (1976); Levin v. Livingston Tp., 35 N.J. 500, 507-508 (1961). N.J.S.A. 40:55D-62 specifies that "[t]he regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of building or other structures or use of land." The exception to this general requirement of uniformity within a district provided by N.J.S.A. 40:55D-68 is limited to the continuation of "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance." The reference to a "nonconforming use" in this context is clearly to a use which was legal under a prior zoning ordinance. This conclusion is confirmed by N.J.S.A. 40:55D-5, which defines a "nonconforming use" as "a use or activity which was lawful prior to the adoption, revision, or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reason of such adoption, revision, or amendment." The prior state enabling legislation, in effect when the 1958 East Brunswick zoning ordinance was adopted, contained substantially the same provisions as the current law (N.J.S.A. 40:55-31; N.J.S.A. 40:55-48), except that it contained no definition of "nonconforming use." However, that omission is of no significance since the governing case law indicates that the term "nonconforming use" had the same meaning under the state enabling legislation in effect in 1958 as is now explicitly set forth in N.J.S.A. 40:55D-5; that is, a use must have been legal under a prior zoning ordinance to be a valid nonconforming use. Hilton Acres v. Klein, 35 N.J. 570, 581 (1961); Universal Holding Co. v. North Bergen Tp., supra.
*23 Defendants seek to justify the attempted blanket validation of all uses of property, regardless of their legality, by characterizing it as a "grandfathering" provision designed to avoid the difficult proof problems presented in establishing valid nonconforming uses. However, placing this burden upon a party who claims a nonconforming use "comports with the policy of the law not to favor such a use." Heagen v. Allendale Bor., 42 N.J. Super. 472, 478 (App.Div. 1956). Therefore, the possibility that a blanket validation of all existing uses of property might ease the administration of a zoning ordinance cannot justify a practice which would be inconsistent with any reasonable concept of a comprehensive zoning plan providing for uniformity of use throughout each district. It would, in effect, result in impermissible spot zoning based upon a landowner's unilateral action in commencing an illegal use. See Palisades Properties, Inc. v. Brunett, 44 N.J. 117, 134-135 (1965).
Defendants also rely upon decisions which imply that ordinances which permit limited enlargements of nonconforming uses (Moore v. Bridgewater Tp., 65 N.J. Super. 1, 21 (App.Div. 1962)) or the inclusion of an "intended" use as part of a nonconforming use (Weber v. Pieretti, 72 N.J. Super. 184, 198 (Ch.Div. 1962), aff'd 77 N.J. Super. 423 (App.Div. 1962)) would be valid. However, such ordinances, while exceeding the mandates of state law, are compatible with the basic rationale behind the recognition of nonconforming uses, which is to afford a measure of protection for property owners who have relied in the past upon a repealed zoning ordinance. On the other hand, the courts have uniformly rejected attempts by property owners to secure valid nonconforming uses by unilateral action which violates the zoning ordinance, and any attempt by a municipality to extend retroactive approval to illegal conduct can fare no better. See Hilton Acres v. Klein, supra at 581.
For these reasons, neither the present land use statutes nor those in effect in 1958 provide authorization for the adoption by a municipality of a zoning ordinance which confers blanket *24 authorization for any existing use of land, regardless of whether it was ever legal in the district where located. This means that even if the zoning ordinance provided explicit authorization for the purported administrative practice of the East Brunswick planning officials, it would be invalid.[3]

III
Lastly, it is argued that even if the sale of antiques from the subject premises is illegal, plaintiffs are barred from challenging the use under principles of waiver and/or estoppel.[4] This contention was not advanced before the board of adjustment; indeed, the board would not have jurisdiction to consider the point. Jantausch v. Verona Bor., 41 N.J. Super. 89, 93 (Law Div. 1956), aff'd 24 N.J. 326 (1957). Consequently, there was no opportunity before the board to develop a record. Furthermore, the issues were not projected by affirmative defenses in the answers of either defendant. The only mention of waiver or estoppel in the pleadings is in the pretrial order, which poses as an issue "whether actions of the zoning board and other municipal officials operate to estop the municipality from enforcing the zoning ordinance." But even the pretrial order fails to pose the issue, belatedly advanced in defendants' trial briefs, that plaintiffs' own actions bar pursuit of this lawsuit. Therefore, it is not properly part of the case.
In any event, the enforcement of a zoning ordinance ordinarily may not be prevented on grounds of estoppel merely *25 because a suit to terminate the illegal use could have been commenced earlier. Hilton Acres v. Klein, supra, 35 N.J. at 581-582; Universal Holding Co. v. North Bergen Tp., supra, 55 N.J. Super. at 111-112; Adler v. Irvington Parks Dept., 20 N.J. Super. 240, 243 (App.Div. 1952). In this case the undisputed facts are that defendant Rauff was not the owner of the subject property during the period of plaintiffs' alleged inaction in filing suit and that he acquired title with knowledge that a question might arise concerning the propriety of his use of the premises for the sale of antiques. Consequently, Rauff's reliance upon the alleged use of the premises to sell antiques cannot be established and without reliance estoppel cannot be established. Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461, 470-471 (App. Div. 1964). Moreover, the record provides ample support for a concern on the part of plaintiffs that Rauff might undertake to sell antiques on a more intensive basis than had Thomas, thereby explaining why Rauff's acquisition of the property prompted the initiation of proceedings which plaintiffs had refrained from filing earlier. Therefore, even were the issue properly part of the case, the facts here fall far short of the extraordinary circumstances required to prevent enforcement of a zoning ordinance on grounds of estoppel.
Accordingly, a judgment will be entered in favor of plaintiffs reversing the resolution of the zoning board, declaring the sale of antiques on the subject property not to be a permitted use and enjoining Rauff from continuing such use.
NOTES
[1] The board made passing mention of evidence that a predecessor in title to Thomas also had sold antiques on the property and it suggested that such use may have been permitted under the ordinance then in effect. However, it did not definitively pass on the issue and the board's conclusion that a valid nonconforming use now exists was based solely on Thomas' use. In any event, the record is inadequate to establish the nature and extent of antique sales conducted on the property by Thomas' predecessor in title.
[2] Although the court's conclusion that the 1958 ordinance did not have this effect makes it unnecessary, strictly speaking, to reach the issue, it is addressed for the purpose of providing a complete disposition of the case in the event a reviewing court were to conclude that the court had erred in its interpretation of the 1958 ordinance.
[3] Although Thomas never acquired a valid nonconforming use, the court notes for the sake of completeness of disposition that if a nonconforming use had been established, the record contains substantial credible evidence to support the board's conclusion that there was no abandonment of that use. See Saddle River Bor. v. Bobinski, 108 N.J. Super. 6, 16-18 (Ch.Div. 1969). There also is substantial credible evidence to support the board's conclusion that Rauff's sign was of substantially the same size and dimensions as Thomas'.
[4] The applicable legal theory would appear to be estoppel rather than waiver. See Hilton Acres v. Klein, supra, 35 N.J. at 582.